# CHARLESTON.

BEE *et al. v.* SEAMAN *et al.*

Submitted January 28, 1892.—Decided April 2, 1892.

1. JUSTICE OF THE PEACE—CERTIORARI—RECORD.

When a writ of *certiorari* under the statute is awarded to a justice to review his judgment, in order to respond to the exigency of the writ he must certify and send the record as the writ finds it. As the record is when the writ reaches him, so it must be certified and sent. It is then too late to make contemplated or intended certificates of facts and bills of exception parts of such record, but it must be sent up as it is without increase or diminution.

2. JUSTICE OF THE PEACE—CERTIORARI.

The common-law function of the writ (not ancillary) was to remove the civil cause from the inferior to the superior court before judgment, where the superior court had original jurisdiction and could administer the same justice as the court below, and the case was there retained and tried. Under our statute it lies after judgment of the justice; and upon the hearing in the Circuit Court such court will review such judgment of the justice upon the merits, determining all questions arising on the law and the evidence, and render such judgment or make such order upon the whole matter, as law and justice may require. It may in a proper case, if justice require it, set the verdict of the jury aside and award a new trial, and when the judgment of the justice is set aside, the case is not sent back but must be retained in the Circuit Court, and disposed of as if originally brought therein.

3. JUSTICE OF THE PEACE—CERTIORARI

In applying to the Circuit Court for a writ of *certiorari* to the judgment of a justice the general rule is that the party must present his petition within ten days after the judgment complained of is rendered according to the analogy of appeals, if the case had been tried without jury.

For the facts to which the above rules are applied, and out of which the above points of law arise, see statement of facts in the opinion.

*J. G. Schilling* for plaintiffs in error cited 10 S. E. Rep. 56; 9 S. E. Rep. 51; Black Jdgmts. §§ 183, 184; 16 W. Va. 245; 14 W. Va. 264; Code, c. 134 ss. 5, 6.

*W. A. Parsons* for defendants in error cited Code, c. 50, ss. 26, 48, 49, 50, 52; 5 N. H. 391; 1 Chit. p. 12, §§ 13, 14, n. 1; Code, c. 134, s. 586.

HOLT, JUDGE:

On the 9th of October, 1888, the plaintiffs below and plaintiffs here brought suit before A. B. THORN, then a justice of Roane county, for the recovery of two hundred dollars for damages for a wrong—so styled in the summons. The summons was returnable and in fact returned before the justice, A. B. THORN, on the 20th of October, 1888. The parties were present in person and by counsel; and plaintiffs filed their complaint in writing, which was excepted to by counsel for defendants.

. The complaint states fully, but in a plain and direct manner, the facts constituting the cause of action. It is the common case of sale with warranty, effected by the false and fraudulent representations of the vendor, in which the vendee has his choice to sue in contract on the warranty or go for the fraud in tort. In this case it appears, both by summons and complaint, that the vendee chose to sue for the wrong, reciting the contract of sale and warranty as inducement, or as an inseparable part of the facts out of which springs the cause of action, or as necessary to be stated in order to make the cause of action clearly appear; and there can be no doubt that plaintiffs have thus elected to sue for the wrong, looking at the complaint alone; for they close it by saying: therefore they (the plaintiffs) are damaged by the false representations and fraud of the defendants in the sum of two hundred dollars for which they sue and ask judgment. Therefore Justice THORN, after hearing argument, overruled the exceptions to the complaint.

The sale seems to have been of a patent called the "Kentucky Churn Power," whatever that may be.

Their exceptions being overruled, the defendants answered orally; and the justice under the head of the case on his docket noted briefly the contents of the oral answer, as follows: "That the allegations of the plaintiffs are not true, except that of the sale and price of said power." On motion of defendants the cause was then continued until 10th

November, 1888. On 10th November, 1888, it was by consent continued until 14th December, 1888 ; and now it appearing that the summons and complaint had been lost or taken from the magistrate's office, a copy of the original summons was substituted, and counsel for plaintiffs supplied the complaint; and on demand of defendants a jury came, six in number, according to law, but the cause was continued to a blank day (14th December, we may presume, as further appeared) and the jury held to appear upon that day ; but Banks Jenkins, a juror, was by consent of parties released by the court.

And now J. N. Board, one of the plaintiffs, appeared, and in the presence of the court and the parties to the cause disclaimed any further interest in the suit, whereupon counsel for plaintiffs moved that Board be made a party defendant in the action. This appears not to have been done.

On the 14th December, 1888, the parties in person came again, and plaintiffs pleaded an amendment in writing to their complaint, saying that, as a part of the consideration for the patent right, they executed to defendants a negotiable note for one hundred dollars, and again asked judgment for the two hundred dollars damages aforesaid sustained. This was signed *seriatim* by S. B. Seaman, G. L. Seaman, J. N. Board, by counsel. This amendment took defendants by surprise, as they claimed by their counsel, and they moved for a continuance on that ground. Thereupon the justice had them sworn to answer as to their defence to the amended complaint, and being of opinion that they had none, as to the making and delivery of the negotiable note, overruled their motion to continue.

And now, the parties being ready for trial, the jurors were called, elected and duly impanelled and sworn according to law, and a recess was taken until 1 o'clock P. M., at which time the counsel for plaintiffs proceeded to state to court and jury the cause of action on the part of plaintiffs, and counsel for defendants their defence. The witnesses were called and sworn, and gave evidence before the court and jury, and a *subpœna duces tecum* having been served upon defendants, to produce a certain writing of

letters-patent for a "churn power" and improvement in churns, the same was produced and read in evidence, also a certain contract with a certain company at Nashville, Tenn.; and here the plaintiffs rested their case.

And the defendants, to maintain the issue on their part, introduced their witnesses, who gave evidence and introduced a certain deed of conveyance of right to certain counties in Pennsylvania of an "improved churn power," and then rested their case; and after argument for plaintiffs and defendants the case together with the necessary papers was submitted to the jury, who soon after returned the following verdict: "We, the jury, find for the plaintiffs, and assess their damage at two hundred dollars and ten dollars and sixteen cents interest"—signed by the foreman. Whereupon counsel for defendants moved the court to set aside the verdict as being manifestly contrary to the law and the evidence; and the court took time to consider until 15th December, 1888, 8 o'clock A. M., until which time the case was adjourned.

On said 15th of December, came again the parties by counsel, and the court having duly considered defendants' motion to set aside the verdict overruled the same, and counsel for plaintiffs having waived the right to a judgment for the ten dollars and sixteen cents interest mentioned in the verdict asked that judgment be entered for the two hundred dollars, whereupon the court rendered judgment in favor of the plaintiffs S. B. Seaman and G. L. Seaman against the defendants F. H. Bee, L. S. Wolf, and E. B. Parsons, upon the verdict of the jury, for two hundred dollars with interest from the 15th day of December, 1888, until collected, and costs.   Here A. B. THORN signs as justice.

The counsel for defendants having excepted to the ruling of the court in overruling the motion to set aside the verdict of the jury filed their bill of exceptions and prayed it to be signed, sealed and made part of the record in the case, which is accordingly done; and the said bill of exceptions is in the words and figures following, to wit:

"S. B. Seaman, *et al.* vs. L. S. Wolf, *et al.*   Before A. B. Thorn, justice of Reedy, Roane county.   Be it remembered that upon said trial there was —— verdict in favor of

the plaintiffs for the sum of two hundred dollars, and ten dollars and sixteen cents interest, and thereupon the defendants moved the court to set aside said verdict because the same was contrary to the law and evidence, and after mature consideration the court doth overrule said motion, to which ruling of the court the defendants except, and pray that this may be signed, sealed as their bill of exceptions, and made part of the record in said case. A. B. Thorn, J. P."

Here Justice Thorn signed for the last time while he was a justice in office. Justice Thorn went out of office by expiration of his term on 3d December, 1888, and on 1st January, 1889, J. M. Lester came in as his successor. The foregoing is called the "docket" of the justice, required to be kept by him in which to make certain entries. See chapter 50, § 176 *et seq.*, Code. "So far as the entries in the docket are concerned, the form shall be regarded as immaterial, if the truth be stated so as to be intelligible." Section 180, c. 50. "Whenever it is necessary to prove a judgment or other proceeding had before a justice, or any process issued by him, or the return thereof, or any order made by him in a suit, the docket in which it is entered, or a transcript thereof certified by him or his successor in office or the person lawfully having the custody of such docket, shall be evidence of the same, but shall not be conclusive, if errors or omissions be shown." Section 182, c. 50. And by section 183 every justice, upon the expiration of his term of office, shall deposit with his successor his official docket, *etc.*, together with all papers relating to his judicial proceedings, *etc.* Justice Thorn turned over his docket, together with all papers relating to his judicial proceedings, to justice Lester, his successor in office.

So the matter stood until the 31st day of May, 1889, when the defendants presented to the judge of the circuit court of Roane county, in vacation, a petition for a writ of *certiorari* to be awarded them, directed to J. M. Lester, justice, who is the successor in office of said Thorn, late justice, in whose custody said proceedings and judgment now are, commanding said Lester, justice as aforesaid, in the name of the State of West Virginia, to certify the

same to the clerk of the Circuit Court of Roane county, in order that the said judgment and proceedings had in the said civil action may be reviewed in this court, and such judgment rendered as law and justice may require, and that the said S. B. Seaman, G. L. Seaman, and J. N. Board be summoned to appear before this court to show cause, if any they can, why said judgment and proceedings shall not be reviewed on said writ, and a judgment rendered as law and justice may require.

Under chapter 110, Code, on 31st May, 1889, the judge of the circuit court, in vacation, awarded the writ as prayed for; and presumably on the same day (for it is without date) the bond required being given, the clerk of the Circuit Court issued the writ. By section 3, c. 110, "in every case before * * * a justice, * * * in which a writ of *certiorari* would be according to the provisions of the preceding section, (2) (in a case of this kind, where the amount in controversy, exclusive of interest and costs, exceeds $15) the justice * * * shall, upon the request of either party, in a civil case, * * * certify the evidence, if any, which may have been heard, and sign bills of exceptions, setting forth any rulings or orders which may not otherwise appear of record. Such certificate of evidence and bills of exceptions shall be a part of the record, and as such be removed and returned to the Circuit Court."

In obedience to the mandate of the writ, Justice LESTER, the custodian of the docket, certified what has already been given, adding at the foot the itemization of costs, not material. On the 31st of May, 1889, A. B. THORN, the late justice, and as late justice, sends up another paper, purporting to be a certificate of the evidence introduced on the trial before him already mentioned.

It does not appear that any notice, by service of rule or otherwise, was ever given to the plaintiffs Seaman and others, but on the 2d September, 1889, in the Circuit Court of Roane county, the cause came on to be heard; and the order then entered recites, among other things, as follows:

"This day came the parties by their attorneys, and the matters of law arising upon the said writ, the errors as-

signed by defendants in their petition, and proceedings had before the said THORN, as such late justice, and being argued by counsel for the parties to the said civil action, and having been considered by the court, and the court having seen and inspected the said transcript, original papers, and certificates of evidence, it is therefore considered by the court that the said judgment in favor of the plaintiffs G. L. and S. B. Seaman, against the said defendants, be, and the same is, by the court, reversed and amended," *etc.*, "and, the court now proceeding to render such judgment as law and justice require it is therefore further considered by the court, it being proven that the case was dismissed as to the plaintiff J. N. Board, and that he was, on motion of plaintiffs' attorney, made and treated as a defendant in said action, that the said action be, and the same is, by the court, dismissed, and that defendants recover of the plaintiffs, in addition to their costs expended in this court, their costs expended before the justice."

From this judgment plaintiffs Seaman and others have brought the cause here by appeal.

The first error assigned is that the court based its judgment upon what the counsel for plaintiff calls a "fugitive paper," purporting to be a certificate of facts certified by Justice THORN, not from any record anywhere, and after he had become *functus officio* and had ceased to have the power to certify even from his old record.

The law is well settled that in obedience to the writ the record must be certified and returned in the condition in which it was when the writ came to the court below. It must neither be increased nor diminished. As the writ finds it, so it must go. It is then too late to write out bills of exceptions or certificates of fact, or anything not at the time already a part of the docket or record—a thing, as regards the writ, completed and done, as distinguished from something contemplated or intended. Such being the rule, no better illustration of the reason for it could be given than is furnished by this case.

This "fugitive paper," as it is called, was not only not a part of the record when the mandate came to the lawful custodian of the record to certify and send it to the Circuit

Court as it then was before him residing, but it is certified by one who then had no right to certify it at all, had it been, as it was not, a part of such record. The only person who could then properly respond to the exigencies of the writ, certifies the record as it was residing with him on the 27th day of May, 1889, and this supposed certificate of the late justice was then not a part of it.

It is easy to see the hardship which it was intended to remedy. The counsel may have neglected, as is sometimes done, to write out the bill of exceptions, and have the justice certify and sign it, until, by the expiration of his term of office, it was too late. The power of the justice does not, like that of a sheriff, run on until he winds up his old business. The one is ministerial, the other judicial; and, of the latter class, none more so than "settling" a bill of exceptions. It was intended, no doubt, to ascertain and settle the proper course in such case of seeming hardship. Justice Thorn evidently so intended it; for it is carefully separated from the true record, and signed by him as "late justice." The correct mode was to certify it as the writ found it, and leave it for the Circuit Court to indicate and apply the remedy, if any.

*Bartow* v. *Daniels*, 25 W. Va. 512, was decided in 1885. In this case it was held that section 13, art. 3, Const., as amended in 1880, applies to cases tried by a jury of six before a justice, and prohibits the retrial of such cases by the Circuit Court under the provision of chapter 8, Acts 1881, which is now found in chapter 50, Code. See section 163 *et seq.;* sections 174, 175. To provide an appeal in such cases the law as to the writ of *certiorari* was amended until it stands as we have it. See chapter 110, ss. 2–6, Code, p. 761 (Ed. 1891.) It lay at common law in all civil actions, before judgment, where the courts of king's bench and common pleas had jurisdiction, and could administer the same justice to the parties as the court below, and was there retained and tried.

Now, by our statute in every case before a justice, the record or proceeding may after a judgment or final order therein be removed by a writ of *certiorari* to the Circuit Court of the county in which such judgment was rendered,

except where the amount in controversy, exclusive of interest and costs, does not exceed fifteen dollars.

Upon the hearing, such Circuit Court shall, in addition to determining such questions as might have been determined upon a *certiorari*, as the law heretofore was, review such judgment of the justice upon the merits, determining all questions arising on the law and evidence, and render such judgment or make such order upon the whole matter as law and justice may require ; and to enable it to do this the methods of procedure in the Circuit Court are made to apply to the proceeding before the justice ; that is, the justice shall upon request of either party, in a civil case, matter, or proceeding, certify the evidence, if any, which may have been heard, and sign bills of exceptions, setting forth any rulings or orders which may not otherwise appear of record. Such certificate of evidence and bills of exceptions shall be a part of the record, and as such be removed and returned to the Circuit Court, which shall confirm the judgment of the justice, if, upon the whole matter, law and justice may require it, but, if not, reverse it, and set it and the verdict of the jury aside, grant a new trial, or make such other order as the case may require.

But if the judgment of the justice and verdict of the jury are set aside, the case shall be retained in such Circuit Court and disposed of as if originally brought therein. Here the writ comes back to its original use and purpose as it was in like cases at common law ; having first answered the additional purpose of appeal in jury cases, under chapter 50. See sections 163–174.

But the writ should not be granted where the party seeking it has been guilty of laches ; and generally, and in analogy to the writ of error or appeal, it should not be granted where the time within which these latter could be brought has expired. The true analogy in this case is furnished by appeals according to sections 163–174, chapter 50 Code. And in cases where the party has permitted the time to expire which would have applied, but for the trial by jury, a writ of *certiorari* should not be awarded for relief, unless upon a special showing unmixed with blame on the part of the petitioner. See *Poe* v. *Machine Works*, 24 W.

Va. 517; *Long* v. *Railway Co.*, 35 W. Va. 333 (13 S. E. Rep. 1010).

In this case the petition for the writ shows on its face, that the judgment complained of was rendered by Justice THORN on the 15th day of December, 1888, and by its exhibits that Justice THORN's term had expired; that Justice LESTER was his successor in office, and that the supposed certificate of facts which came up with the record was no part of it.

The writ was applied for and awarded on the 31st day of May, 1889, more than one hundred and sixty days after the rendition of the judgment; and no showing of any kind is made or attempted in excuse of this long delay—more than sixteen times as long as he would have been ordinarily entitled to, if it had been on appeal without a trial by jury. It was not the intention of the legislature that a party demanding a trial by jury should thereby have the power to give himself, as matter of right, an indefinite extension of the time in which to take a *quasi* appeal; but they supposed, reasonably, that the time for appeal would be governed in such case by the analogy furnished if it had been tried without a jury.

It would answer no useful purpose to discuss the other questions raised; in fact, might be improper, as forestalling the rights of the defendants, if any, by other methods.

The final judgment of the Circuit Court, complained of, rendered on the 2d day of September, 1889, is reversed, also the order of 31st May, 1889, awarding the writ of *certiorari*, and the writ itself is quashed as improvidently awarded.

REVERSED.  REMANDED.