FRED E. NEWELL *vs.* ROBERT S. FRANKLIN, *et al.,* COMMISSIONERS.

JANUARY 21, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Certiorari. Pleading. Motion to Dismiss.*

On a petition for *certiorari,* a motion to dismiss will be treated as equivalent to a demurrer, admitting all matters of fact set out in the petition; therefore the court will confine its examination to the allegations of the petition, including so much of a statute as is therein set forth.

(2) *Certiorari. Parties. Petitioners. Special interest.*

Owners of real estate and taxpayers of a town or city to be connected by a proposed bridge have a special interest in the subject-matter sufficient to enable them to petition for a writ of *certiorari*, especially in a case where the attorney general is solicitor for the respondent commissioners under Gen. Laws, cap. 17, § 4.

(3) *Certiorari. Parties.*

In proceedings for *certiorari* seeking to review the acts of a commission for the erection of a bridge, in the acceptance of a bid for such erection, the contractor is not a necessary party respondent.

(4) *Certiorari. Judicial Acts.*

A commission appointed for the erection of a bridge, in rejecting and accepting bids for the work, exercises an executive discretion and judgment, not a judicial one; and therefore a petition for *certiorari* seeking to review such acts is not seeking to review the judicial action of the commissioners, and can not be entertained.

(5) *Constitutional Law.*

Where there is nothing in a petition for *certiorari* that raises the question of the constitutionality of an act, the court will not consider it.

(6) *Presumption of Constitutionality.*

Until the constitutionality of an act has been directly brought in question, it is entitled to the presumption of constitutionality.

CERTIORARI. Heard on motion to dismiss, and granted.

DUBOIS, C. J. This is a petition for a writ of *certiorari* against the members of a commission, appointed by the governor, to erect a bridge between the cities of Pawtucket and Central Falls, brought by certain real estate owners and taxpayers of the said cities, who seek thereby to cause a record of the proceedings of said commission to be certified to this court in order that said proceedings may be reviewed and that the illegal actions of said commission may be quashed, in order that a contract entered into with one Frederick E. Shaw may be declared null and void.

The petition sets forth:

1. The names and qualifications of the petitioners.

2. A reference to Pub. Laws, cap. 499, passed at the January session, 1909, and the appointment and qualification of the respondents as commissioners thereunder.

3. The authority of the commissioners, under said act, to

determine the necessity for the reparation of an existing bridge connecting the cities of Pawtucket and Central Falls on North Main street, or for the building of a new bridge at that location; and upon the determination of such necessity, to adopt suitable plans for such reparation or construction and plans for approaches and abutments and for raising or lowering the grade of the highways leading thereto.

4.   The ignorance of the petitioners concerning the commissioners' determination as to the necessity for reparation of the existing bridge.

5.   That the commission caused an advertisement to be published.

6.   That the commission did determine upon building a new bridge, and did issue a certain proposal for building a bridge, with contract and specifications attached thereto; and have adopted said plans and specifications as suitable plans for such new construction.

7.   The history and description of the highways leading to said bridge in Pawtucket and Central Falls.

8.   That the plans adopted by the commission provide for a bridge, to be fifty feet wide, and for widening the river.

9.   That, to build a bridge as provided for in said plans and specifications, it will be necessary to take or use land not now used for highway purposes.

10.   That the power to widen highways is in the board of aldermen of said cities.

11.   That there are no provisions in said act for widening the streets or the bridge, or to take land for such purpose.

12.   That the contract has been awarded to Frederick E. Shaw, who is proceeding to construct the new bridge, and that the act of the commission in adopting said plans and in awarding the contract to Shaw is null and void.

13.   That in said plans there is a provision for the building of a temporary foot-bridge, which is illegal and void.

14.   That in said proposal there was a provision that each bid must be accompanied by a bond or certified check.

15.  That the commissioners improperly received the bid of the McKinnon Construction Company without approving the bond, when said bond was not satisfactory.

16.  That four parties bid under said proposal, whereof the bid of the Sperry Engineering Company was the lowest and that of Frederick E. Shaw the highest.

17.  The history of the Sperry Engineering Co., one of the bidders, and its ability and willingness to give bond.

18.  That the Sperry Engineering Co. did furnish said commissioners evidence of its ability to perform the contract within the time specified.

19.  An averment that the commissioners did grossly abuse their discretion by rejecting the bid of said Sperry Engineering Company and accepting the bid of Frederick E. Shaw, and that their acts of rejection and acceptance were without authority, illegal and void.

To this petition the respondents have filed the following motion to dismiss:

"And now comes the respondents Robert S. Franklin, Fred B. Lawton and Albert H. Langworthy, North Main Street Bridge Commission, and move that the petition for a writ of *certiorari* filed by Fred E. Newell, *et al.*, be denied and dismissed, and for reasons say:

" (1)  That the petitioners have no interest in the subject matter of the controversy other than is held in common with any other taxpayer of the Cities of Central Falls and Pawtucket, as appears in and by their said petition.

" (2)  That said petition is not brought in the name of the Attorney General, as appears in and by said petition.

" (3)  That the act or acts of the respondents complained of are legislative or ministerial in their nature, and not judicial or quasi judicial as appears in and by said petition.

" (4)  That this Honorable Court has no jurisdiction to review in these proceedings the acts complained of as set forth in the said petition, as in and by said Chapter 499 of the Public Laws such acts are left to the discretion of these respondents.

"(5)   That these respondents are under no obligation to keep any record of their doings and proceedings, as appears by reference to Chapter 499 of the Public Laws of Rhode Island.

"(6)   That Frederick E. Shaw, of the City and County of Providence, the person with whom these respondents have entered into a contract to erect a bridge at the site of the North Main Street bridge, is not a party to these proceedings, as appears in and by said petition.

"(7)   That the petitioners are guilty of laches in bringing their said petition after these respondents, as commissioners aforesaid, have incurred liability and work has commenced on the contract entered into by them, as appears in and by said petition.

"(8)   If it appears by said petition that said commissioners have exceeded their authority, the petitioners have an adequate remedy by injunction, and therefore *certiorari* will not lie.

"WM. B. GREENOUGH,

"*Attorney General.*

"EDWARD D. BASSETT.
"IRVING CHAMPLIN,
"JAMES HARRIS,

"*Solicitors for Respondents.*"

(1)   The motion to dismiss has been treated as equivalent to a demurrer, which, for the purpose of questioning the sufficiency of the petition, admits all matters of fact therein set out.   It is therefore necessary to confine our examination to the allegations of the petition, including so much of Pub. Laws, cap. 499, hereinbefore referred to, as is therein set forth, because it must stand or fall, as the case may be, in consequence of its own strength or weakness.

(2)   The petitioners, as owners of real estate and taxpayers in the cities to be connected by the proposed bridge, have a special interest in the subject-matter in controversy sufficient to enable them to petition for the writ, especially in a case like the present, where, as appears above, the attorney-general is one of the

solicitors for the respondent, under the provisions of Gen. Laws, cap. 17, § 4, which reads as follows: "SEC. 4. The attorney-general, whenever requested, shall act as the legal adviser of all state boards and commissions and the officers thereof, of all commissioners appointed by the general assembly, of all the general officers of the state, and of the state auditor, in all matters pertaining to their official duties, and shall institute and prosecute, whenever necessary, all suits and proceedings which they may be authorized to commence, and shall appear for and defend the above-named boards, commissions, commissioners, and officers, in all suits and proceedings which may be brought against them in their official capacity." This statute has received the interpretation of this court in the case of *The Newport Police Commission,* 22 R. I. 654. The same provisions are now contained in Gen. Laws, 1909, cap. 23, § 4.

(3)    There is no merit in either of the contentions that Frederick E. Shaw should be a party to the proceedings or that the petitioners have been guilty of laches in the premises.

By the third and eighth grounds of their motion to dismiss, the respondents deny the appropriateness of the remedy invoked by the petition, and present for our consideration the question whether the petition prays for the review of the judicial action of a public body exercising, under the law, judicial or quasi-judicial functions. See *Greenough* v. *School Committee of Pawtucket,* 27 R. I. 427.

Even if we assume for the purpose of this consideration, that the respondent commission is a board that may exercise judicial or quasi-judicial functions, the vital question still remains to be answered,—was it exercising such function in respect of the acts complained of in the petition? for, if it was not, then *certiorari* will not lie. In the case of *Greenough* v. *School Committee, supra,* this court quoted with approval the words of Mr. Justice Field as to the distinction between a judicial and a legislative act: "The one determines what the law is and what the rights of the parties are with reference to transactions already had; the other prescribes what the law shall be in future cases arising under it. Wherever an act undertakes to de-

termine a question of right or obligation or of property as the foundation on which it proceeds, such act is to that extent a judicial one and not the proper exercise of legislative functions." We deduced therefrom the principle that judicial action is the determination of contested existing rights; while that which directed future action on the principle of policy or (4) expediency is legislative. Tested by this standard, are the acts complained of judicial? Such acts are described in paragraphs numbered 5, 6, 12, 15, and 19, hereinbefore referred to, and consist of the publication of an advertisement; the determination to build a bridge; the issuance of a proposal for building the same, with contract and specifications attached, and the adoption of the plans as suitable for the purpose; the awarding of the contract for the building of the bridge to Frederick E. Shaw; the improper reception of a bid; the rejection of the bid of the Sperry Engineering Company and the acceptance of the bid of Frederick E. Shaw. There can not be even a colorable claim that any of these acts determined contested existing rights, with the possible exception of the last, viz.: the rejection of the bid of the Sperry Engineering Company; the acceptance of the bid of Frederick E. Shaw and the awarding of the contract to him. Such a claim was made in the case of *Hammer* v. *Smith et al.* (Supreme Court of Arizona, March 27, 1908), 94 Pac. Rep. 1121. The question raised in that case, upon demurrer to a petition for writ of *certiorari*, was whether the board of supervisors was exercising a judicial function in letting a contract for public printing, which the statutes required should be made with the best responsible bidder. The petitioner maintained that the board, in determining who of the respective bidders is the best responsible bidder, must exercise discretion and use judgment, and therefore that its action was judicial. But the court held: "That a function may be held to be judicial, it must be exercised in determining the merits of an issue. That there may be an issue either of law or of fact, there must be involved the interests, contending to some degreee at least, of two or more parties. . . . In the case before us there is no issue, although there is demanded the exercise of both judgment and discretion in determining who

is the best responsible bidder. There is no issue because there is but one party in interest—the public. As against one another the bidders present an issue, but this issue is merely incidental. Its adjudication is not the ultimate. No bidder has a right to the contract. None has a right or privilege of any sort to be conserved by the board. To be a party to a judicial determination one must present as against his adversary a right or privilege to be maintained or denied. The discretion and judgment exercised in this matter are those of an agent seeking the best interest of his principal in letting a contract. They are executive discretion and judgment, not judicial. Illustrative cases are *Tanner* v. *Nelson,* 25 Utah, 226, 70 Pac. 984; *People* v. *Board,* 54 Cal. 375 (contra, *Jacobson* v. *Board* (N. J. Sup.), 64 Atl. 609); *Adleman* v. *Pierce,* 6 Idaho, 294, 55 Pac. 658.

"The function exercised by the board of supervisors in this instance not being judicial, the action of the trial court in sustaining the demurrer and dismissing the proceeding was sound, and must therefore be affirmed."

The reasoning of the court is cogent and convincing and applicable to the case at bar. As the petition does not seek to review the judicial action of the commissioners, the motion to dismiss must be granted.

(5) The petitioners have attempted to call in question the constitutionality of Pub. Laws, cap. 499, aforesaid. There is nothing in this petition that raises such a question and thereby necessitates an examination of the statute for the purpose of determining its constitutionality; and therefore we do not regard the question as properly raised in this proceeding, and decline to consider it. It is our duty, however unpleasant, to consider such question, when properly raised. But until the constitutionality of an act of the General Assembly has been directly brought in question, it is entitled to the benefit of the

(6) presumption of constitutionality. As is well stated in Cooley's Const. Lim. 7th ed. p. 231, II. "Neither will a court, as a general rule, pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause. ' While

courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. They will not seek to draw in such weighty matters collaterally, nor on trivial occasions. It is both more proper and more respectful to a coördinate department to discuss constitutional questions only when that is the very *lis mota.* Thus presented and determined, the decision carries a weight with it to which no extra-judicial disquisition is entitled.' In any case therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable."

For the foregoing reasons, the petition must be denied and dismissed.

BLODGETT, J., concurring. I concur in the view that the aid of the attorney-general need not be invoked on behalf of the complainants, inasmuch as it is his statutory duty to defend the respondents; and I am of the opinion, also, that the complainants, as taxpayers of the cities of Pawtucket and Central Falls, respectively, are not chargeable with laches and are entitled to petition for the writ, and that Frederick E. Shaw is not a necessary party to this proceeding.

The determination of the remaining questions, however, seems to me to rest upon considerations different from those advanced in the majority opinion.

The principal contention alleged in the petition is that the act of the commission in awarding the contract to construct the bridge to one Shaw, for the sum of $72,856.00, was illegal, null and void, and the petitioners seek to have that action reviewed in this proceeding. Whether this action of the commission is valid or is void depends obviously upon the powers conferred by the act creating it, and this leads to a consideration

of the provisions of the act itself, viz., cap. 499, Pub. Laws, which was passed on May 7, 1909, the last day of the last session of the legislature, and is entitled "An Act for the Appointment of a Commission for the Erection of a Bridge between the Cities of Pawtucket and Central Falls." While the purpose of the act as thus expressed by its title seems to be clear and definite, an examination of its provisions shows that some of them are impossible, others incoherent and unintelligible, and others are inadequate for the accomplishment of the purposes aforesaid by this commission.

While in a narrow and technical sense it is true that the exercise of certain specifically alleged and assumed powers is here questioned, yet, because not only of the public nature of the work, but also that it may more clearly appear whether the powers exercised have or have not been granted, it seems not inappropriate to examine certain provisions of this statute, not indeed, with a view to prejudging questions which may hereafter arise in some other proceeding, but to indicate those obvious defects which are unquestionable and which in their totality must necessarily greatly influence, if they do not determine, a conclusion upon the power to do the specific act here questioned.

It was admitted at the hearing that the act was modelled upon Chapter 1332 of the Public Laws, passed June 12, 1894, and providing for the construction of the so-called "Red Bridge," by the city of Providence, over the Seekonk river. A comparison of the two acts is therefore not inappropriate in our inquiry as to the powers and rights conferred by the act creating the present commission.

By the provisions of the Red Bridge act it is specified in the first section that "The City of Providence shall proceed forthwith to construct over the Seekonk river at the site of the present 'red bridge,' so-called, a new iron or steel bridge," and then follow directions as to width of travelway and footway, and the load which it shall carry, and many other particulars. By the third section of the act an abutting owner damaged "by any of the work provided herein to be done," including damages arising from change of grade of highway on the approaches to

the bridge, is entitled to have the same appraised by commissioners appointed by the appellate division of the Supreme Court, with a right of appeal from said commissioners and a trial by jury, " and the amount so awarded by said court with costs shall be forthwith paid by said city." The fourth section provides that "The expense of all of said work of construction, including the removal of the present bridge, together with the damage and costs mentioned in section three of this act be paid by the City of Providence in the first instance," etc. By the fifth section it was provided that "When such bridge shall be completed and the full cost thereof, including the damages and costs mentioned in section three of this act, shall have been ascertained," a statement thereof is to be filed in the office of the clerk of the appellate division of the Supreme Court, together with an application for the appointment of a commission to apportion the expense upon the cities and towns benefited. The sixth section provides for the appointment by the court of such a commission of three persons "who shall, after due notice to all parties interested and hearing thereon,  .  .  .  determine, award and name the proportion of the total amount expended by the said city under this act, including the damages and costs mentioned in section three of this act  .  .  .  which each of the said cities and towns shall pay  .  .  .  .  "The expenses and fees of the commissioners of apportionment allowed by said court shall be paid in such manner and by such parties as the said court shall determine and award."

Chapter 499, Public Laws, *supra*, provides, in sections 1, 2, and 3, as follows: " SECTION 1.  Within thirty days after the passage of this act the governor shall appoint three suitable and disinterested persons, and they and their successors are hereby constituted 'A commission for the erection of a bridge between the cities of Pawtucket and Central Falls over the Blackstone river, known as the North Main street bridge.'

"Any vacancy in said commission, by resignation or otherwise, shall be filled by the appointment of a suitable person by the governor.

"SEC. 2.  Said commission is hereby authorized and em-

powered to determine the necessity for the reparation of the bridge now connecting the two cities on North Main street, or for the building of a new bridge at said location, and upon the determination thereof to adopt plans for the reparation of the present bridge or the erection of a new bridge.

"Sec. 3. Said commission is further authorized and empowered, upon determination of the necessity and advisability of repairing the present bridge or the construction of a new bridge at said location, to adopt suitable plans for said reparation or said new construction, and plans for the approaches and abutments thereto, and for the raising or lowering of the grade of the highways leading thereto, if in the opinion of said commission such change is desirable, in which case said cities of Pawtucket and Central Falls shall alter the grades of their highways to correspond with the grade of such new bridge."

Section four of the act is similar in its provisions to section three of the Red Bridge act in the matter of damages caused to an abutting owner and the appeal from the award of appraisers appointed by the Superior Court and a trial by jury, but differs in this respect, that "the amount so awarded by said court shall be forthwith paid," but does not specify by whom it shall be paid. It is obviously impossible in the case of a claim for damages by an abutting owner caused by a change of grade, under section three, by the city of Central Falls, that the court can award that the damages should be paid by the city of Pawtucket, who is no party to such a suit, even if there were valid reason why the city of Pawtucket should in any event pay damage for that which it has not caused. But section five provides that "The expense of *all* said work of reparation and construction shall be paid by the city of Pawtucket in the first instance, and the city council of said city is hereby authorized and *directed* to make all such appropriations as may from time to time be necessary for that purpose;" and after providing for the issue of bonds of the city of Pawtucket for this purpose, and for a sinking fund for them, continues: "and all obligations which may be created under the authority of this act shall be exempted from the operation of section 21, Chapter 36 of the General Laws, and all acts in amendment thereof and

in addition thereto," which is the only statute prohibiting the creation of municipal indebtedness in excess of three per cent. of the taxable property of the town or city.

It will be observed here that in this respect this act differs from the former act in that it makes no provision of any kind for the payment of damages to abutting owners; neither does it make any provision whatever for defraying the expenses of removing the old bridge, which was specifically provided for in the Red Bridge act and which is a wholly different matter from the expense of constructing a new bridge. It is obvious that a new bridge can not be constructed on the location of the old one without the demolition of the latter, but the cost of destruction and the cost of construction are as much separable as the acts themselves. In the Red Bridge act this was recognized, and the cost of removal of the old bridge was specifically directed to be included in the amount payable by the city of Providence. Here there is no statutory provision for defraying that cost at the expense of the city of Pawtucket. The commissioners seem to have recognized this omission and their consequent embarrassment, and without statutory authority therefor have required the cost of removal of the old bridge to be included in the proposals of contractors for the construction of the new one. The distinction would at once appear in case the old bridge had been washed away by a freshet. It is another of the deficiencies of this act that it makes no provision for the payment of the necessarily large expense in this respect which must be incurred before the work of construction is commenced.

It is contended by the respondents that the cost of construction is to be apportioned by the commission, under section six of the act, the provisions of which can only be adequately set forth by a citation of a part of it: "When such bridge shall be repaired, or the construction thereof completed, and the full cost of such reparation or construction shall have been ascertained, said city of Pawtucket shall file a full and detailed statement, setting forth the amount of expenditure, including the cost and expenses of said commission, made by it pursuant to this act, and the amount of interest due to the city of Pawtucket for money advanced under this act, in the office of

the city clerk in both the city of Pawtucket and the city of Central Falls, and upon the filing thereof shall, after due notice to all parties interested therein and a hearing thereon at a time and place by said commission named in said notice, determine, decree, award, and name the total amount expended by said city of Pawtucket under this act, including the costs and expenses of this commission and the interest due the said city on amounts paid, which each of said cities of Pawtucket and Central Falls shall pay, and the proportion of the same which each of said cities shall pay." Then follows a provision for a report of the commissioners to the Superior Court, and provides for exceptions to the report and determination of the same by the court.

As to the first clause of this section, it is to be observed that the grammatical subject of the sentence concluding with the words "shall," etc., "determine, decree, award, and name the total amount expended by said city of Pawtucket under this act, including the costs and expenses of this commission and the interest due the said city on amounts paid, which each of said cities of Pawtucket and Central Falls shall pay, and the proportion of the same which each of said cities shall pay," is not "the commission," which, indeed, is directed to hold a hearing thereon, but is "said city of Pawtucket,"—so that, while the commission is to hear the parties, the city of Pawtucket is to "determine, decree, and award."

But it is further provided that the city shall so "decree, determine, and award" "the total amount expended by said city of Pawtucket" under the act, and that "each of said cities of Pawtucket and Central Falls shall pay" such total amount. To whom Pawtucket is to pay again, after once having paid the contractor, is not apparent; and if each one of the cities is to pay "the total amount expended by said city of Pawtucket," it is obvious that such amount is to be twice paid, and that the language is wholly unintelligible. There seems to be no escape from this futile conclusion in view of the concluding sentence, which is perfectly clear: "*and* the *proportion* of the same which each of said cities shall pay."

Again, the Red Bridge act included a provision in section six

thereof, *supra*, that "The expenses and fees of the commissioners of apportionment allowed by said court shall be paid in such manner and by such parties as the said court shall determine and award." This act contains no provision for the payment of any fees or compensation to the commissioners, but merely includes "the *costs* and *expenses* of this commission," which are obviously very different matters; and, equally obviously, do not include counsel fees, since the attorney-general is by law their legal adviser and has appeared in this case in their behalf, and also do not include any fees or compensation to the commissioners, for their services. Even if it were possible to so construe "costs and expenses" as to include compensation to the commissioners for their services, there is no provision in the act for the fixing of the amount of their charges; indeed, on this construction, the amount must be fixed by the commissioners themselves, and they are thus to be held to be authorized to charge what they please, and these amounts must first have been actually paid by the city of Pawtucket before the apportionment, since upon this construction they are specifically included in computing "the total amount expended by said city of Pawtucket," *supra*. Moreover, even upon exceptions to the report before the court, there seems to be no jurisdiction given to the court to revise or allow such charges for compensation, since the only judgment which the court is in terms empowered to enter and issue execution upon is a judgment in favor of the city of Pawtucket against the city of Central Falls, and is limited to a revision of the apportionment, and jurisdiction is not extended to a consideration of "the total amount expended by said city of Pawtucket" prior thereto. The mere statement of such a contention as this is sufficient.

The foregoing incoherent and unintelligible and inadequate provisions of this act and the omissions therein have thus been dwelt upon at length in order that we may thus be prepared for a consideration of the powers of the commission in respect of the allegation which is the gist of this petition, viz., that the award of a contract to construct the bridge by the commis-

sioners to one Shaw, for the sum of $72,856.00, is illegal, null, and void, as being in excess of the authority of the commission.

What, then, are the powers of the commission, under the provisions of the act, in that regard? The answer is simply that there is no authority given the commission, in terms, to contract for or to construct a bridge at all. The respondents contend that the title of the act and the first section of it, *supra,* raise an implied authority to do so, since it was the evident purpose of the legislature that there should either be a reparation of the old bridge or the construction of a new one. To this contention it is replied that the commission is by sections one and two expressly "authorized and empowered" to do only two things in this respect, as set forth in sections one and two of the act, viz., to determine whether the old bridge shall be repaired or a new one constructed, under section one; or, under section two, in the event of a determination to construct a new bridge, to adopt plans therefor. All power to make a contract therefor, or to proceed with the construction, rests only upon implication; and such implication is not favored, in view of the express grant of authority to do certain enumerated and specific acts. It is further urged that all the provisions of the act are quite as consistent with a construction of it to the effect that the city of Pawtucket, which is to pay for it all in the first instance, has by implication the authority to contract for and to construct that for which it is thus to pay, in like manner as was the city of Providence in the case of the Red Bridge, *supra,* and that it is a needless expense to employ expert engineers and other assistants at the expense of the city of Pawtucket when that city already has an engineering department entirely competent to act in the premises, though in no way under the jurisdiction of this commission. It is clear that the act either does or does not authorize the commission to construct the bridge, and of necessity to make a contract therefor which shall be binding upon the city of Pawtucket for the cost of it. If this power be implied we are next to consider whether the commission can thus bind the city for an amount in excess of $72,000.00, not only without notice to the city, but, if at all, even against its protest. Upon examination of the act, it is

hardly surprising, in view of the other omissions and defects in this act previously considered, to find that there is absolutely no limit fixed for the cost of the bridge in question. Indeed, the city council of Pawtucket is "*directed*" to pay the cost thereof, even though it should create an indebtedness in excess of the debt limit provided by law. The provisions of sections one and two "authorize and empower" the commissioners to adopt the plans for "a new bridge" simply, without specifying whether it is to be a bridge of wood, granite, steel, marble, or other material, or whether it is to be built upon piers or otherwise, or with or without a draw, or the load it shall be capable of carrying or the traffic it shall accommodate, and absolutely without limit as to cost. The petitioners contend in their brief that such a delegation of legislative power to the commissioners is unconstitutional, and therefore that, inasmuch as this court could not sustain such an act if the power were expressly given to the commission, it certainly can not so confer an unconstitutional power by implication and construction, and cases from other jurisdictions are presented in support of this contention.

In *State* v. *Budge et al.*, 14 No. Dak. 532, 539 (1905), the legislature of that state created a capitol commission "whose duty it shall be to remodel and reconstruct upon its present site the capitol building of the state of North Dakota at Bismarck, and erect a suitable residence for the governor on the lots now owned by the state according to the provisions of this act." The law contains no directions as to how much shall be expended for each of said buildings. That is left entirely to the commissioners; and, continuing, on p. 540, the court says: "In this case the commission has unlimited discretion as to what the residence shall cost, and what the capitol shall cost, within the aggregate cost of both, which may, perhaps, be said to be limited to $600,000, because the aggregate sum of the certificates of indebtedness against the funds with which the buildings are to be paid for is limited to that sum. The commission has unlimited power under this law to fix the limits of the cost of each of said buildings. They finally determine what sums shall be used for each building. We think that such discretion should have been exercised by the legislature. It is not prop-

erly an administrative discretion. What the same buildings shall cost should have been limited by the act, as it is a substantive matter of legislative discretion that the legislature cannot delegate." And this in respect of State funds and not of municipal funds.

In *Mathewson v. Hawkins*, 19 R. I. 16, the question before the court was whether a contract for the construction of a bridge in the town of Burrillville, purporting to be executed on the part of the town by a "Surveyor of Bridges for the town of Burrillville," was valid in the absence of an appropriation therefor. While the decision of the question turned largely upon the powers of the officer in question, the court observed (p. 19) that "the taxpaying voters of the several towns have the right to determine how much shall be expended on the highways and bridges within the respective limits thereof and when and at what cost new bridges shall be constructed and erected," and on p. 20: "To hold that the contract in question is binding on the defendant town would be equivalent to holding that any surveyor of highways, or person occupying a similar position, has the power to construct and erect therein such bridges and at such cost as he alone shall see fit, and that the town must pay the bills. But we think it is clear that no such power exists."

And numerous other authorities are cited by the petitioners to the same effect. To this contention the respondents urge that this constitutional question is not properly before the court in this proceeding and upon a motion to dismiss.

Without deciding the constitutional question thus suggested, and which may come before this court in some other proceeding, as by petition for an injunction, it is sufficient for the present proceeding to hold that no construction of this act should be adopted which raises so grave a question of constitutional authority, and that it is our duty rather to hold that the legislature has failed to do that which it is claimed it sought to do, than it is to hold that the legislature has done that which it had no power to do. The alternative is that the statute by its silence in this respect has omitted to give to these commissioners, even by implication, the necessary authority to con-

tract for and construct the bridge in question, and this conclusion is rendered even more tenable in view of that which the statute has failed to provide in other respects, as hereinbefore set forth.

The conclusion which follows is, therefore, that the act does not authorize the commissioners to contract for and construct this bridge, and that, inasmuch as these powers do not exist at all in the commission, it is obviously impossible to say that they are judicial in their nature and thus subject to review in this proceeding under the rule laid down in this State in *Greenough v. School Committee,* 27 R. I. 427, 428, viz.: "It is well settled that in this State the common-law limitations of *certiorari* prevail which confine it to the review of the judicial action of inferior courts or of public officers or bodies exercising under the law judicial or quasi-judicial functions. *Dexter* v. *Town Council of Cumberland,* 17 R. I. 222; *Lonsdale Company* v. *License Commissioners,* 18 R. I. 5; *State* v. *Board of Aldermen of Newport, Ib.* 381; *Smith* v. *Town Council of Burrillville,* 19 R. I. 61."

For such entire lack of authority in these commissioners to make the contract complained of, it follows that *certiorari* can not be maintained, and that the motion of the respondents to dismiss the petition must be granted.

*John N. Butman, Lewis A. Waterman, Waterman, Curran, and Hunt,* for petitioners.

*William B. Greenough, Attorney-General, Edward D. Bassett, Irving Champlin, and James Harris,* for respondents.