R. P. DANIELLEY, *et al. v.* CITY OF PRINCETON

(CC 464)

Submitted January 11, 1933.   Decided January 24, 1933.

*H. B. Lee,* Attorney General and *W. Elliott Nefflen,* Assistant Attorney General for State Water Commission.

*H. E. De Jarnette* and *W. Broughton Johnston,* for City of Princeton.

HATCHER, JUDGE:

Upon the petition of Danielley and others to the State Water Commission (hereinafter called the Commission), alleging the pollution of Brush Creek by the sewage of the city of Princeton and that petitioners were directly affected injuriously by such pollution, the city was cited under Code 1931, 16-11-5. A hearing was had, and an order was entered by the Commission directing the city to cease depositing sewage in Brush Creek or to install the Imhoff sewage filter

system, which the Commission estimated would cost approximately $75,000 with an annual operating cost of $3,600 (or to install the "activated Sludge System", which is more expensive than the Imhoff). The city had the case removed to the circuit court by certiorari, and there demurred to the petition and the citation. The demurrers were overruled, and on the joint application of the parties to the suit, the petition and citation were certified to this Court for decision on their sufficiency.

Code, 16-11-5, provides that " any person * * * alleged to be causing the pollution of any water * * * shall, upon the petition of any person affected by such pollution be cited," etc., by the Commission. Section 1 of article 11 defines the term "person" when used in the article as including a municipal corporation; and defines the term "pollution", when so used, as meaning "the contaminating or rendering unclean or impure of any water by any act prohibited by section six, article six, chapter twenty of the code or sections two and three, article nine of this chapter." Section 2 of article 9 makes it unlawful *to throw or cause to be thrown* (knowingly and wilfully) "any dead animal, carcass or part thereof, or any putrid, nauseous or offensive substance, into any well, cistern, spring, brook or branch of running water which is used for domestic purposes." The petition charges that Brush Creek was used for domestic purposes before the city sewage was cast into it. The word "branch" is defined in Webster's New Int. Dictionary as "a small stream; a creek." The term "to throw" above, refers not only to a manual cast, but is used also in its broader sense, meaning *to inject* (as a fluid) and *to put in*. It will be remarked that the section makes no exception of any person as a polluter or of any act of pollution because of its magnitude; the sole test is the quality of the polluting substance. *State* v. *Mitchell,* 47 W. Va. 789, 791, 35 S. E. 845. It is beyond question that city sewage is essentially a nauseous and offensive substance. Hence the deposit of that sewage in Brush Creek causes its *pollution* within the satutory definition, and an examination of the two other sections defining pollution is unnecessary.

Counsel for the city point to the fact that article 1 of chapter 16, gives to the State Health Department and its several

units, express advisory supervision over city sewers with the right to make and enforce rules relative thereto, and say that the delegation of such authority to that department excludes the Commission from exercising jurisdiction over such sewers. Overlapping jurisdiction does not prevent action by any one body of several upon which jurisdiction is conferred. Besides, the authority of the Commission is confined exclusively to cases of pollution and the Commission is required to "study questions arising in connection with pollution of waters in the state and * * * make research, investigation and scientific experiments in efforts to discover economical and practical methods for * * * the control and correction of stream pollution." Code, 16-11-8. These requirements are not extended to the other units of the State Health Department. The Commission is also given detailed authority not specifically given the other governmental bodies to "specify the particular system or means to be used or operated" to regulate the pollution. Code, 16-11-6. Therefore, the Commission is better prepared to deal with cases of pollution than the other health units.

Code, 16-11-7, provides that the circuit court shall review any order of the Commission and may hear and consider any pertinent evidence offered, etc., "and shall determine all questions arising on the law and evidence and render such judgment or make such order upon the whole matter as law and equity may require." This provision clearly contemplates a decision on the merits. *Alderson* v. *Commissioners*, 32 W. Va. 454, 460-2, 9 S. E. 863; *Bee* v. *Seaman*, 36 W. Va. 381, 15 S. E. 173; *Farmington* v. *Commissioner*, 112 Mass. 206, 213. Counsel contend that a decision on the merits requires the exercise of executive functions and that the act is unconstitutional because it would commit to the judiciary such executive power, citing *Hodges* v. *Commission*, 110 W. Va. 649, 159 S. E. 834. The statute under consideration in the Hodges case specifically provided for a trial *de novo* in the circuit court. As the instant statute does not have that express provision, the attorney general would differentiate the two statutes on that ground. The instant act terms the proceeding before the circuit court as "certiorari". But both common law and statutory certiorari confine the scope of

judicial review to the record as made in the subordinate tribunal. *Alderson* v. *Commissioner, supra,* 462; *Morgan* v. *R. R. Co.,* 39 W. Va. 17, 23, 19 S. E. 588; *Lbr. Co.* v. *Brooks,* 46 W. Va. 732, 734, 34 S. E. 921. Both common law and statutory certiorari confine the review to judicial and quasi-judicial acts of the lower tribunal. *R. R. Co.* v. *Triadelphia,* 58 W. Va. 487, 52 S. E. 499; *Quesenberry* v. *Road Com.* 103 W. Va. 714, 721, 138 S. E. 362. The provision in the act for consideration of evidence additional to that in the record below, and for the entry of an order *on the whole matter* would make the proceeding in effect *an appeal with trial de novo.*

A hearing before the Commission involves the determination (1) of whether the act complained of is a statutory pollution, and if so (2) of the proper sewage treatment or system of filtration to reduce the pollution. The first determination is quasi-judicial; the second is executive or administrative. An order of the Commission properly determining these questions is an order *on the whole matter.* Upon appeal from the Commission, the circuit court, in order to pass upon the whole matter, would have to review the identical questions primarily determined by the Commission. A review of the system (for the regulation of the pollution) adopted by the Commission and the approval of that or some other system by the court would require the court itself to exercise discretion, i. e. executive power. Whether the proceeding before the court be regarded as certiorari or appeal, the court cannot substitute its discretion for that of the Commission lawfully exercised. *People* v. *The Board,* 33 N. Y. 344; *Hammer* v. *Smith,* 11 Ariz. 420, 423-4; *Newell* v. *Franklin,* 30 R. I. 258, 264-5, 74 A. 1009. The legislative, executive and judicial powers, under the Constitution, are each in its own sphere of duty, independent of and exclusive of the other; so that whenever a subject is committed to the discretion of the legislative or executive department, the lawful exercise of that discretion cannot be controlled by the judiciary. Cooley, Const. Lim. (8th Ed.) 213-4, 221; *The Atty. Gen.* v. *Brown,* 1 Wis. 442 (*513) 449 (*522); *State* v. *R. R. Co.,* 56 Fla. 617, 634, 47 So. 969; *Wright* v. *Defrees,* 8 Ind. 298, 302; *Hodges* v. *Commission, supra,* 652-3-4. This inhibition is so well established that it should be known even to the sciolist. Supine or usurpatory would

be the court that would accept from a legislature the feigned bestowal of power to override the lawful exercise of executive discretion. We say again, as in the *Hodges* case, ''This attempt of the legislature to commit one of its great responsibilities to the judiciary is a flattering display of confidence in our department. But we must reject this expansion of our power just as firmly as we should resist a reduction of our rightful authority.''

The attorney general further contends that if the part of the statute dealing with the review by the circuit court is unconstitutional, the remainder of the act is not invalidated thereby. The act contains no provision that invalidity of part shall not affect the remainder. In the absence of such a provision, there is a presumption that the legislature did not contemplate the enforcement of the statute except as a whole. ''In the absence of a legislative declaration that invalidity of a portion of a statute shall not affect the remainder, the presumption is that the legislature intends the act to be effective as an entirety.'' *Williams* v. *Oil Company*, 278 U. S. 235, 60 A. L. R. 596. There is nothing to oppose that presumption. Moreover the provision for complete judicial supervision of the orders of the Commission was assuredly some inducement, if not the controlling inducement, for entrusting the Commission with its initial authority. As was well stated by the supreme court of Nebraska in *State* v. *Poynter*, 59 Nebr. 417, ·434: ''It is not necessary that the invalid portion of an act of the legislature should have operated as the sole inducement to the passage of the law to render the same void. It will have that effect if the void part to any extent influenced the legislature in passing the statute.'' We would not be justified in saying that the legislature would have passed the act without the provision for complete judicial supervision. In such case, it is the inflexible rule that the entire act must be held invalid. *Gas Co.* v. *Springfield*, 292 Ill. 236, 243-5, 18 A. L. R., pp. 929, 936-7; Cooley's Const. Lim. (8th Ed.), 362-3; Sutherland, Stat. Const. (2nd Ed.), sec. 303; *Hodges* v. *Commission, supra*, 656-7.

The rulings of the lower court on the demurrers were erroneous and are accordingly reversed.

*Reversed.*