# CHARLESTON.

State Ex Rel. W. E. Herald v. E. M. Surber, City Clerk.

Submitted April 18, 1919.   Decided April 18, 1919.

1. Statutes—*Construction—Giving Effect to Entire Statute.*

   A statute should be so interpreted as to give effect to all of its words, if possible.  (p. 787).

2. Same—*Construction—Meaning of Words.*

   General, non-technical terms of a statute are allowed operation and effect to the extent of ʰheir usual and ordinary meaning, unless restrained by a clearly manifested legislative purpose inconsistent therewith, or some other weighty consideration.  (p. 788).

3. Same.

   A merely permissive and unnecessary implication does not alone suffice to restrain them.  (p. 788).

4. Elections—*Registration Books—Statutes.*

   A special or local statute requiring ''registration books'' to be sent to the ''polling place,'' for election purposes, when the law contemplates two such books for each precinct, requires the sending of both registration books, notwithstanding the law governing general elections requires only one to be sent to each precinct.  (p. 786).

5. Same—*Transfer of Voters—Power of Clerk—Absence of Registration Books.*

   Although sec. 98a (9) of ch. 3 of the Code requires the sending to each precinct of only one of the two registration books provided for it, while the other remains in the clerks office of the county court, a transfer of a voter cannot be legally made by said clerk, after one of the books of the precinct from which it is to be made has been lawfully sent from his office for election purposes, but it can be made as long as both books remain in his office, provided the time be not later than the Saturday next preceding the election.  (p 786).

Mandamus by the State, on the relation of W. E. Herald,

against E. M. Surber, City Clerk, to compel the delivery of a registration book to the Commissioner of Election.

*Writ awarded.*

G. W. *McClintic,* for relator.

W. E. R. *Byrne,* for respondent.

POFFENBARGER, JUDGE:

The City Clerk of the City of Charleston having refused to deliver to a properly designated and accredited commissioner of election for an election to be held in said city, under its charter as amended by an act passed by the Legislature, Feby. 14, 1919, one of the two registration books of the precinct represented by the applicant for the election supplies for said precinct, under the impression and advice that the law authorized delivery of only one of said books, the commissioner made an informal application here for a writ of mandamus, to which said clerk appeared.

The act amending the charter provides that, except as therein "otherwise set out," the general law governing registration and elections shall apply in the city elections to be held under the charter. That law specifically provides that one registration book shall be sent to each precinct. The amended city charter says: "The registration books shall be sent to the polling place along with the ballots." If the Legislature intended the general statute to govern as to the number of registration books to be sent out, this provision of the charter was unnecessary, and, though statutes often unnecessarily repeat provisions of others literally or substantially, there is, nevertheless, a presumption of a legislative purpose in the use of every word, phrase and clause found in a statute. Tested by its terms, this amendment clearly contemplates delivery of both registration books for each precinct to the election officers, and the words indicate intent to alter the general election statute as to the registration books, in so far as it applies to city elections held in the City of Charleston.

But the words indicating such purpose are general and indefinite, and the courts sometimes read into statutes

83 W. Va.

framer in such terms, implied exceptions. *Coal & Coke Co.* v. *Conley* and *Avis*, 67 W. Va. 129. Restraint of the general terms used in the amending act to the purpose and effect of the general statute is claimed under this rule of implied exception, because, it is said, voters removing from precincts in which they have been registered to others, between the date of registration and the date of the election, would be deprived of the right of transfer, accorded by the general election law. This argument assumes the right of a voter to be so transferred after one of the registration books has been sent out by the clerk of the County Court for the purposes of a general election. Under a proper construction of sec. 98a (9) of ch. 3 of the Code, there is no such right. Upon the issuance of a certificate of transfer, the clerk is required to strike the name of the voter "from the books from which said certificate is issued." If, when a transfer is requested, one of the books has gone out, he cannot comply with these terms of the statute. Hence, the statute necessarily implies that no transfer can be made in the absence of one of the books, and that the voter must apply for it while both books of the precinct in which he is registered are in the hands of the clerk. The law requires the election supplies for each precinct, including one registration book, to be sent out not more than four nor less than two days before the election. Sec. 37, ch. 3, Code. As they may go at any time within these limitations, the voter entitled to a transfer is subject to a degree of uncertainty as to the time of his application for it, but it does not deprive him of a full and fair opportunity to obtain a transfer, nor unreasonably hamper him in the exercise of his franchise. His right is absolute until within four days of the election. Hence, if the legislature intended it, there is no constitutional restraint or limitation of its authority to ordain it. *Daniel* v. *Simms*, 49 W. Va. 554. The terms of the statute quoted here make the intent to do so plainly manifest, unless they are limited or qualified by others. Sec. 98a (9) of ch. 3 of the Code provides that no certificate of transfer shall be issued later than the Saturday next preceding the election, and this is the only provision that recognizes the right of a voter

to obtain a transfer after the date on which one of the registration books could be lawfully sent out. In form and effect, it is prohibitive. It is a limitation, not a grant. Nor does it necessarily imply right in the voter to defer his application until such Saturday. It necessarily implies such right conditionally, that is, if both books are then in the clerk's office, so as to enable the clerk to comply with the other terms of the section. Our construction gives this necessary implication effect and range of operation, and we are not required to do more. But we are required by the rules of interpretation to give the other terms effect, if possible, namely, those requiring the name to be struck from both books. In obedience to the rules, we adopt the construction that gives some effect to every word in the section.

Another untenable position is that the law contemplates unbroken custody of at least one book by the clerk, to avoid danger of loss by fire or other accident. Nothing in either the general statute or the charter expressly so provides. In so far as such intent may arise by implication from the terms of the general statute, it furnishes no weighty reason for an implied limitation of the express terms of the charter act. Mere unnecessary implications never restrain the meaning and operation of express legislative terms used in a statute.

Upon these principles and conclusions, the writ applied for was awarded.

*Writ awarded.*