PAUL O. FIEDLER, *Mayor v.* MARION E. THACKSTON *et al.,*
*and* OLIVER G. MOORING.

(No. 9518)

PAUL O. FIEDLER, *Mayor v.* MARION E. THACKSTON *et al.,*
*and* GEORGE E. HOLLEY.

(No. 9519)

PAUL O. FIEDLER, *Mayor v.* MARION E. THACKSTON *et al.,*
*and* RALPH R. ROACH.

(No. 9520)

PAUL O. FIEDLER, *Mayor v.* MARION E. THACKSTON *et al.,*
*and* CHARLES WYATT WATTS.

(No. 9521)

PAUL O. FIEDLER, *Mayor v.* MARION E. THACKSTON *et al.,*
*and* ARTHUR MITCHELL.

(No. 9522)

PAUL O. FIEDLER, *Mayor v.* MARION E. THACKSTON *et al.,*
*and* A. L. OLDAKER.

(No. 9523)

Submitted September 1, 1943. Decided October 5, 1943.

· *E. L. Hogsett*, for petitioner.
*McDaniel Purcell* and *Samuel Biern*, for respondents.

KENNA, JUDGE:

These six proceedings in prohibition are based upon facts so nearly identical that the cases all give rise to exactly the same questions of law so that they were therefore submitted together and need not be separately dealt with in the preparation of an opinion.

On December 1, 1942, Claude V. Swann, who was then the Mayor of the City of Huntington, vested with the general appointing power, including the police department, appointed Oliver G. Mooring on the police department of that City for the probationary term of six months under the provisions of Code, 8-5(a)-6. Mayor Swann's term expired on the thirty-first day of December, 1942, and he was succeeded by Paul O. Fiedler. On May 29, 1943, Fiedler notified Mooring in writing that he would not receive an absolute appointment and that his services for the City of Huntington would come to an end on June 1, 1943. The last duties he performed were on the "third trick" on May 31, 1943.

On June 8, 1943, Mooring and the five others filed their separate petitions with the Police Civil Service Commission in each alleging that they had been wrongfully discharged from the police department of the City of Huntington and that their probationary appointment automatically continued in effect under the terms of Sections

6 to 13 of Article 5 (a), Chapter 8, Code, unless their conduct or capacity had proven unsatisfactory, which had not occurred.

After the petitions were filed with the Civil Service Commission and after that Commission had exercised its jurisdiction by entertaining the petitions and fixing a date for their hearing, Mayor Fiedler filed a petition here in each case asking that a writ of prohibition be granted, directed against the three members of the Commission and commanding them to proceed no further.

The position of the petitioner for the writ of prohibition is that there is no question of removal or discharge under Section 13, Article 5 (a) of Chapter 8 of the Code but that Mooring had been appointed for a probationary period of six months under Section 6 of the same Article and that the Mayor had the peremptory right, with or without cause, to either permit his services to continue or by notice in writing to bring them to a close, and that when the Mayor saw fit to terminate them Mooring could not complain because he had accepted what he knew to be an appointment for a limited term. Since their terms of employment had simply expired, he asserts, the Commission lacked jurisdiction to pass upon the question of wrongful removal.

The first position of respondents is that one or more of them was permanently employed due to the fact that, in spite of the Mayor's letter, they were allowed to continue on duty after the expiration of the six months probationary period, and thus, since Section 6 of the Act provides that "retention in the service" shall be equivalent to a final appointment, they were thereafter permanently employed. Proof was taken to show for what period each of the respondents was carried on the records of the City of Huntington as an employee of the police department, and in each case it was established that the respondent was carried for the six months probationary period only. Consequently, we think it is unnecessary to discuss this question further.

The principal question applicable to the six cases that the Civil Service Commission has entertained is whether the Mayor of Huntington in giving the notice of the termination of the probationary period provided by Section 6 of the Act, must assign a definite reason for doing so, the existence of which the probationer is entitled to try before the Commission.

Code, 8-5 (a)-6, reads in part as follows:

"* * * All original appointments to any position in police departments within the terms of this article shall be for a probationary period of six months: Provided, however, That any time during the probationary period the appointee may be dismissed for just cause, in the manner provided in section thirteen of this article. If at the close of this probationary term, the conduct or capacity of the probationer has not been satisfactory to the appointing officer, the probationer shall be notified, in writing, that he will not receive absolute appointment, whereupon his employment shall cease; otherwise, his retention in the service shall be equivalent to his final appointment."

It would seem that there is no question but that the above quoted section was fully complied with by Mayor Fiedler when he notified the respondent, in writing, that they would not receive absolute appointments. The statute does not require the notice to the probationer to contain the statement of a reason for either his capacity or his conduct being unsatisfactory. It is to be noted that although the quoted part of the statute provides that at any time during the probationary period the probationer may be dismissed for just cause, his right to an absolute appointment is made to rest upon his conduct or capacity not being satisfactory to the appointing officer. In other words, although the probationer's dismissal during the six months period requires just cause, his right to a permanent position is made to rest solely upon his being satisfactory to the appointing officer, both in conduct and capacity.

Section 13 of Article 5 (a) is the section providing for

the removal of members of the police department, the detail of which it is unnecessary to go into, the principal question springing from the fact that its opening language reads as follows: "No member of any police department within the terms of this article shall be removed, discharged or reduced in rank or pay except for just cause, which shall not be religious or political, except as hereinafter provided in section twenty-one; further, no such employee shall be removed, discharged or reduced except as provided in this article, * * *". As we understand the contention of the respondents it is, substantially, that the men involved became members of the police department of the City of Huntington when their "original" appointments to the probationary term of six months became effective, and consequently that the provisions of this section providing for removal for just cause and granting the right to a hearing are applicable to them.

While we agree that for many purposes and in different ways they, in effect, did act as members of the Huntington Police Department and they did discharge the duties of a policeman for a period of six months, we cannot agree that they then became for all purposes such members "within the terms" of Article 5 (a) of Chapter 8 of our Code, in the light of the wording of Section 6 of that Article. Stating who should be considered members of a police department, the Legislature based that conclusion upon the terms of the entire article, and we believe that it plainly intended to exact a trial period of six months from every person before he should be considered a "permanent" as distinguished from an "original" member of a police department within the terms of Section 13. But it is urged by the respondent that Section 6 provides that a probationer may be dismissed during the probationary period only "for just cause", and that that provision places a probationer in the same category as a member of the police department. That contention is sound only to the extent that during the running of the six months probationary term the appointee is protected

by the Act from being discharged without reason, and if that is attempted is entitled to a hearing before the Civil Service Commission. This is true *during* the probationary period, but bears no relation to its termination. The Act distinctly provides that at the expiration of the probationary period, absolute employment may be withheld upon written notice to the appointee. That notice has no effect upon the probationary *period,* but does operate to bring the employment to an end at its expiration.

We have carefully examined the cases cited in the brief of the petitioner and in the brief of the respondents. The decided cases applying directly to the questions presented are all from other jurisdictions. For that reason and due to the fact that the statutes considered do not contain entirely uniform provisions, but differ in their phraseology, we think it is not consequential to enter into a detailed discussion of the authorities in general. We have not been cited to, nor have we found, a decided case which sustains the contention of the respondents to the effect that a probationer for a fixed period, at the end of that period is entitled to a hearing upon the reasons for his not being retained in the service after receiving written notice of that fact. Most of the leading cases involved in similar Civil Service Acts we believe will be found reviewed in the A. L. R. note following *Younie* v. *Doyle,* 306 Mass. 567, 29 N. E. 2d 137, 131 A. L. R. 379, 383.

For the foregoing reasons peremptory writs of prohibition will be awarded.

*Writs awarded.*