143 S.E.2d 535 (1965)
STATE ex rel. CITY OF HUNTINGTON, etc., et al.
v.
Frank J. LOMBARDO et al., Members Police Civil Service Commission, et al.
No. 12450.
Supreme Court of Appeals of West Virginia.
Submitted May 12, 1965.
Decided June 15, 1965.
Dissenting Opinion July 27, 1965.
*537 E. Henry Broh, Huntington, for relators.
George G. Bailey, Wheeling, amicus curiae on behalf of City of Wheeling.
E. Franklin Pauley, Charleston, amicus curiae on behalf of W. Va. State Lodge Fraternal Order of Police and others.
Beckett & Burford and Robert H. Burford, Huntington, amicus curiae on behalf of Fraternal Order of Police, Gold Star Lodge #65, of Huntington.
Dingess & Flynn, Maurice J. Flynn, Henry L. Max, Jenkins & Jenkins, John E. Jenkins, Jr., Huntington, for respondents.
*536 CALHOUN, Judge.
The basic question presented for decision in this original proceeding in prohibition is whether Joshua Adkins, a member of the police force of the City of Huntington, is entitled to a public hearing before the police civil service commission of that city in relation to his previous suspension, as a disciplinary measure, for a period of five days.
The relators in the prohibition proceeding are Edward A. Ewing, city manager, and Esmond E. Harper, chief of police. The respondents are Frank J. Lombardo, Boyce W. Earnhardt and C. McD. England, members of the police civil service commission, and Joshua Adkins, the policeman who was suspended.
On March 11, 1965, the chief of police gave written notice to Joshua Adkins that he would be suspended for a period of five days commencing March 15, 1965, because of certain infractions of the city code pertaining to the operation of the police department. The alleged infractions were stated specifically in the written notice. On March 17, 1965, Edward A. Ewing, city manager, gave a written notice to Adkins that Ewing, as city manager, had investigated the facts pertaining to the suspension and that he, in his capacity as city manager, upheld the suspension which had been ordered by the chief of police.
*538 On March 19, 1965, Adkins filed with the police civil service commission an answer in writing to the charges made against him and requested a public hearing, pursuant to the provisions of Section 13, Article 5A, Chapter 8 of Code, 1931, as amended. In response to Adkins' request, the police civil service commission notified all persons in interest that a public hearing would be held on March 24, 1965, at 11 a. m. in the municipal council chambers. On that date it was determined that one member of the police civil service commission was absent and, therefore, all matters pertaining to the proposed public hearing were continued to 9:30 a. m. on April 3, 1965.
On March 30, 1965, the petition in the prohibition proceeding was presented to this Court. The purpose of the proceeding is to prohibit the police civil service commission from proceeding further on the ground that it lacks jurisdiction to hold a public hearing in a case involving a mere suspension of a police officer. A rule to show cause was granted and made returnable before the Court on April 27, 1965, and further proceedings before the commission were suspended by order of this Court. The matter was continued from that date to May 11, 1965, at which time the case was submitted to the Court for decision on briefs and oral argument of counsel. In addition to briefs filed in behalf of the relators and in behalf of the members of the police civil service commission, amici curiae briefs were filed, by permission of the Court, in behalf of the City of Wheeling; in behalf of West Virginia State Lodge of Police and its president; and in behalf of Fraternal Order of Police, Gold Star Lodge No. 65 of Huntington. The brief in behalf of the City of Wheeling was presented in support of the prayer of the prohibition petition. The other two amici curiae briefs were presented in opposition to the prayer of the petition. Joshua Adkins, the suspended policeman, was not represented by counsel in this Court, though, on the day set for oral argument and submission of the case, he appeared in person and, upon his request, was permitted to speak briefly in his own behalf.
The members of the municipal police civil service commission filed an answer and a demurrer to the prohibition petition. There is no material dispute concerning the facts. The demurrer raises legal questions as follows: (1) The proceeding in prohibition is premature because the police civil service commission has not yet held a public hearing or made a ruling in relation to Adkins' suspension; (2) the relators have failed to avail themselves of other remedies, such as certiorari, and consequently prohibition is not available as a remedy; (3) there has been no abuse of the administrative power or authority granted to the police civil service commission by the legislature; (4) the proposed public hearing is an administrative function, the performance of which cannot be prevented, controlled or reviewed by a proceeding in prohibition; and (5) the relators have shown no clear legal right to the relief which they seek and, therefore, prohibition will not lie.
It is not denied that the suspension of Adkins by the chief of police, and the approval of the suspension by the city manager, from a procedural standpoint, were in accordance with the provisions of the city code and regulations pertaining to such matters. The pertinent portion of the city code is quoted and made a part of the answer filed by the police civil service commission. We are not here concerned with the validity or truth of the charges made against Adkins as a basis for his temporary suspension. The case involves primarily a construction of pertinent statutes enacted by the legislature. The construction of the statutes has resulted in a contrariety of rulings by municipal police civil service commissions and by circuit courts in the state. An opinion prepared by the attorney general has expressed the view that a municipal police civil service commission has no jurisdiction to hold a public hearing in a case of this nature involving only a *539 temporary suspension of a city policeman. All the briefs emphasize the need for a decision by this Court of the basic question presented in the interest of uniformity in the construction and application of the pertinent statutes.
In oral argument it was agreed that Adkins resumed his position and duties as a policeman at the expiration of the five-day period, but that the temporary suspension, unless reversed, will become a part of his police service record. If the temporary suspension was legally unjustified, there may remain a question of his right to compensation during the period of his suspension. In these circumstances it is not contended that the case has become moot merely because of the expiration of the period of suspension and it will not be so regarded by this Court. State ex rel. Hedrick v. Board of Commissioners of County of Ohio, 146 W. Va. 79, 118 S.E.2d 73; Wyckoff v. Painter, 145 W.Va. 310, 316, 115 S.E.2d 80, 85.
Article 5A of Chapter 8 of Code, 1931, as amended, deals with civil service for municipal police departments. Section 1 is, in part, as follows: "* * * On and after the date this article takes effect no person except the chief of police shall be appointed, reinstated, promoted or discharged as a paid member of said department of any city or municipality in the State of West Virginia subject to the provisions hereof, in any manner or by any means other than those prescribed in this article." (Italics supplied.) Section 19 is, in part, as follows: "It is understood and intended by this act to furnish a complete and exclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers, policemen or other employees of said police departments in all cities and municipalities of five thousand population or more, wherein the members of the police department are paid." (Italics supplied.)
Section 13 of Article 5A contains the provisions which primarily involve the question of statutory construction presented for decision in this case. That section, subject to omission of portions not deemed pertinent, is as follows:
"No member of any police department within the terms of this article shall be removed, discharged or reduced in rank or pay except for just cause, * * *; further, no such employee shall be removed, discharged or reduced except as provided in this article, and in no event until he shall have been furnished with a written statement of the reasons for such action. In every case of such removal or reduction, a copy of the statement of reasons therefor and of the written answer thereto, if the person sought to be removed desires to file such written answer, shall be furnished to the civil service commission and entered upon its records. If the person sought to be removed or reduced shall demand it, the civil service commission shall grant him a public hearing, * * *. At such hearing the burden shall be upon the removing officer to justify his action and in event that the civil service commission finds the action of the removing officer unjustified, then the person removed shall be reinstated with full pay for the entire period during which he may have been prevented from performing his usual employment, and no charges shall be officially recorded against his record. * * *
"* * * Provided, however, that if for reasons of economy or other reasons it shall be deemed necessary by any city or municipality to reduce the number of paid members of any police department then said municipality shall follow the following procedure:

* * * * * *
"* * * then reduction in members of the said police department * * * shall be effected by suspending the last man or men, including probationers, that have been appointed to said police *540 department. Such removal shall be accomplished by suspending the number desired in the inverse order of their appointment: Provided, further, that in event the said police department shall again be increased in numbers to the strength existing prior to such reduction of members the said policemen suspended under the terms of this article shall be reinstated in the inverse order of their suspension before any new appointments to said police department shall be made." (Italics supplied.)
This Court has original jurisdiction in cases of habeas corpus, mandamus and prohibition. Constitution, Article VIII, Section 3; Code, 1931, 51-1-3. Circuit courts are granted jurisdiction to supervise and control "all proceedings before justices and other inferior tribunals, by mandamus, prohibition and certiorari." Constitution, Article VIII, Section 12; Code, 1931, 51-2-2. See also Code, 1931, 53-1-2. The writ of prohibition lies as a matter of right in all cases of usurpation and abuse of power "when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." Code, 1931, 53-1-1.
Section 21 of Article VIII of the Constitution provides that such parts of common law as were in force when that article became effective "shall be and continue the law of the State until altered or repealed by the Legislature." It follows, therefore, that the Constitution conferred upon this Court and upon circuit courts jurisdiction in prohibition as that remedy was known at common law. Buskirk v. Judge of Circuit Court, 7 W.Va. 91, 105; Johnston v. Hunter, 50 W.Va. 52, 53, 40 S.E. 448, 449. "Prohibition, at common law, was a remedy against encroachment of jurisdiction. Its office was to restrain subordinate courts and inferior judicial tribunals from extending their jurisdiction, and, in adopting the remedy, the courts have almost universally preserved its original common-law nature, object, and function. Thus, as a rule, its proper function is to prevent courts, or other tribunals, officers, or persons from usurping or exercising a jurisdiction with which they are not vested by law, and to confine them to the exercise of those powers legally conferred. * * *" 73 C.J.S. Prohibition § 2b, page 10. See also 42 Am.Jur., Prohibition, Section 11, page 150, and Section 14, p. 153.
Early in the history of the state, this Court held: "The writ of prohibition lies from a superior court, not only to inferior judicial tribunals properly and technically denominated such, but also to inferior ministerial tribunals, possessing incidentally judicial powers, such as are known in the law as quasi judicial tribunals, and even, in extreme cases, to purely ministerial bodies, when they attempt to usurp judicial functions." Fleming v. Commissioners, 31 W.Va. 608, pt. 1 syl., 8 S.E. 267. Substantially to the same effect, see Brazie v. Fayette County Commissioners, 25 W.Va. 213, pt. 2 syl.; Brown v. Board of Election Canvassers of Randolph County, 45 W.Va. 826, syl., 32 S.E. 168; Board of Education of Black Fork District v. Holt, 51 W.Va. 435, pt. 3 syl., 41 S.E. 337; Moore v. Holt, 55 W.Va. 507, pt. 2 syl., 47 S.E 251; Town of Hawk's Nest v. County Court of Fayette County, 55 W.Va. 689, 691, 48 S.E. 205, 206; Huntington Chamber of Commerce v. Public Service Commission, 84 W.Va. 81, pt. 2 syl., 99 S.E. 285; Langfitt v. Doddridge County Court, 86 W.Va. 316, pt. 1 syl., 103 S.E. 105; State, etc. v. Blankenship, 93 W.Va. 273, pt. 2 syl., 116 S.E. 524; United States Steel Corp. v. Stokes, 138 W.Va. 506, 512, 76 S.E.2d 474, 477; State, etc. v. W. Va. State Board of Examiners for Registered Nurses, 136 W. Va. 88, 101, 66 S.E.2d 1, 9; West Va. State Medical Ass'n v. Public Health Council of W.Va., 125 W.Va. 152, 155-156, 23 S.E. 2d 609, 611. It is equally clear that prohibition will not lie to prevent performance of acts which are purely administrative in character, as distinguished from acts of *541 a judicial or quasi judicial character. United States Steel Corp. v. Stokes, 138 W.Va. 506, pt. 2 syl., 76 S.E.2d 474; Wiseman v. Calvert, 134 W.Va. 303, pt. 4 syl., 59 S.E. 2d 445; State, etc. v. Mingo County Court, 97 W.Va. 615, pt. 2 syl., 125 S.E. 576; Baker v. O'Brien, 79 W.Va. 101, pt. 3 syl., 90 S.E. 543; Campbell v. Doolittle, 58 W. Va. 317, pt. 2 syl., 52 S.E. 260; Williamson et al. v. Mingo County Court, 56 W.Va. 38, pts. 2 and 3 syl., 48 S.E. 835; Hassinger v. Holt, 47 W.Va. 348, pt. 3 syl., 34 S.E. 728. Prohibition is a preventive remedy. State, etc. v. Newman, 85 W.Va. 423, pt. 2 syl., 102 S.E. 122; Haldeman v. Davis, 28 W.Va. 324, pt. 4 syl.
It has been held that the police civil service commission of Huntington is an "inferior tribunal" within a statute authorizing the circuit court to review its action by certiorari. City of Huntington v. Smith, 124 W.Va. 175, 19 S.E.2d 581. The Court has also held that prohibition lies against the police civil service commission of that city. Fiedler v. Thackston, 126 W.Va. 84, 27 S.E.2d 278.
The writ of prohibition is purely jurisdictional; it does not lie to correct mere errors; and it cannot be allowed to usurp the functions of appeal, writ of error or certiorari. State, etc. v. W. Va. State Board of Examiners for Registered Nurses, 136 W.Va. 88, 103, 66 S.E.2d 1, 9. Where, however, the court or tribunal to be prohibited lacks jurisdiction to take any valid action or to enter any valid judgment, the writ of prohibition will issue against further proceedings by it, regardless of the existence and availability of other remedies. State, etc. v. Knapp, 143 W.Va. 896, 913, 105 S.E.2d 569, 579; State, etc. v. Easley, 129 W.Va. 410, 414, 40 S.E.2d 827, 830; Lake O'Woods Club v. Wilhelm, 126 W.Va. 447, pt. 1 syl., 28 S.E.2d 915; White Sulphur Springs, Inc. v. Jarrett, 124 W.Va. 486, pt. 2 syl., 20 S.E.2d 794; Morris v. Calhoun, 119 W.Va. 603, 608, 195 S.E. 341, 345; Wolfe v. Shaw, 113 W.Va. 735, syl., 169 S.E. 325; Midland Investment Corporation v. Ballard, 101 W.Va. 591, pt. 3 syl., 133 S.E. 316; Jennings v. McDougle, 83 W.Va. 186, pt. 10 syl., 98 S.E. 162. One applying for relief by prohibition is not required to wait until the lower court or tribunal has decided the question of its jurisdiction to proceed. Weil v. Black, 76 W.Va. 685, pt. 1 syl., 86 S.E. 666. A party seeking relief by prohibition is not required, as a prerequisite to his right to proceed by prohibition, first to go through a trial or hearing in the lower court or tribunal. State, etc. v. Muntzing, 146 W.Va. 349, 359, 120 S.E.2d 260, 266; State, etc., Cosner v. See, 129 W.Va. 722, pt. 5 syl., 42 S.E.2d 31; Thacker v. Ferguson, 127 W.Va. 177, pt. 3 syl., 32 S.E.2d 47; Lake O'Woods Club v. Wilhelm, 126 W.Va. 447, 28 S.E.2d 915; White Sulphur Springs, Inc. v. Jarrett, 124 W.Va. 486, pt. 2 syl., 20 S.E.2d 794; Wolfe v. Shaw, 113 W.Va. 735, 169 S.E. 325; People's United Telephone System v. Feltner, 87 W.Va. 71, pt. 2 syl., 104 S.E. 406; Noll v. Dailey, 72 W.Va. 520, 79 S.E. 668, 47 L.R.A., N.S., 1207.
In the circumstances of this case and in the light of the authorities previously cited, we are of the opinion and accordingly the Court holds that prohibition is a proper proceeding by which to determine whether the police civil service commission has jurisdiction to hold a public hearing, pursuant to its avowed purpose, in relation to the five-day suspension of Joshua Adkins from his position as a member of the municipal police force. It is not denied that the commission had made preparations for holding such a hearing when the petition in prohibition was presented to this Court. As a matter of fact, the basic defense to the prayer of the prohibition petition is that the commission has jurisdiction to hold such a hearing. The relators are not required, before seeking relief in prohibition, to wait until the commission shall have held a hearing or made a determination of its jurisdiction to do so. It is no defense that the relators might eventually be permitted to seek relief from the action of the commission by certiorari or *542 appeal. In holding such a public hearing, the commission, sitting as an appellate or as a reviewing tribunal to determine whether the suspension of Joshua Adkins was warranted from a factual or legal standpoint, would be performing a function of a judicial character within the meaning of legal principles pertaining to proceedings in prohibition. We believe, therefore, that the case requires that we proceed to determine whether the police civil service commission, in holding the proposed public hearing, would be acting without jurisdiction of the subject matter or in excess of its legitimate powers.
"Jurisdiction relates to the power of a court, board, or commission to hear and determine a controversy presented to it, * * *." Fraga v. State Compensation Commissioner, 125 W.Va. 107, pt. 1 syl., 23 S.E.2d 641. The police civil service commission owes its creation and existence to statute. It has no inherent powers. It has only such powers as are conferred upon it by statute, either expressly or by necessary or fair implication. 1 Am.Jur.2d, Administrative Law, Sections 72 and 73, pages 868-69. See also Honaker v. Board of Education, 42 W.Va. 170, pt. 1 syl., 24 S.E. 544, 32 L.R.A. 413. We have not been referred to any source of statutory power in the police civil service commission except Article 5A of Chapter 8 of Code, 1931, as amended. All portions of Article 5A which are claimed by counsel to be pertinent have been quoted previously in this opinion. Section 1 provides that no person except a chief of police "shall be appointed, reinstated, promoted or discharged" as a paid member of a police department in any manner or by any other means than as prescribed by Article 5A. Section 19 provides that it is understood and intended by the provisions contained in Article 5A to furnish a complete and exclusive system "for the appointment, promotion, reduction, removal and reinstatement" of all officers, policemen or other employees of police departments in all municipalities having populations of five thousand or more. No form of the verb "suspend" is used in any portion of Article 5A, except in the latter portion of Section 13, which portion deals with reduction in the number of members of a police department for reasons of economy or for other reasons. It is there provided that in such circumstances the reduction in numbers shall be effected by "suspending" the last man or men appointed and by "suspending" the number desired in the inverse order of their appointment; and that in the event of an increase in numbers to the previous strength of the police force, the policemen "suspended" shall be reinstated in the inverse order of their "suspension" before any new appointments are made. It seems to be agreed that the statutory language most directly applicable to this case is found in Section 13.
Section 13 states that no member of any police department within the terms of Article 5A shall be "removed, discharged or reduced in rank or pay" except for just cause; and that no employee shall be "removed, discharged or reduced" except as provided in that article. It is contended that it must be assumed that the legislature intended that the words "removed" and "discharged" should not be regarded as synonymous, but rather that they were intended to have different meanings. However, the next sentence in Section 13 states that in every case of "such removal or reduction," a copy of the statement of reasons therefor shall be furnished to the commission and, if the person sought to be "removed" desires to file a written answer, a copy of the answer shall be furnished to the commission. It will be noted that the earlier sentence uses the three words, "removed, discharged or reduced;" whereas the next succeeding sentence omits the use of any form of the verb "discharge," and refers only to "such removal or reduction." The words, "such removal or reduction" can refer only to the previous words "removed, discharged or reduced in rank or pay" and to the words "removed, discharged or reduced." This, we believe, strongly tends to indicate that the word "discharged" was not *543 intended to have any meaning beyond that embraced in the use of the words "removed" and "reduced." The word "reduced" obviously refers to the words "reduced in rank or pay," which are found in the very first part of the article.
Section 5 deals with the powers and duties of the police civil service commission, but it makes no reference to any authority in the commission to grant or to conduct a public hearing in any circumstances. The statutory grant of a right of a person to demand a public hearing, and the statutory grant to the commission of authority to hold a public hearing, are found only in the following rather restricted language of Section 13: "If the person sought to be removed or reduced shall demand it, the civil service commission shall grant him a public hearing, * * *." (Italics supplied). That is to say, the only language of Article 5A which grants a right to a person to demand a public hearing, and the only language conferring upon the commission power to grant and to conduct a public hearing, is restricted to a case of a "person sought to be removed or reduced." We believe we would make an unwarranted invasion of the exclusive domain of the legislative branch of government if we were to read into that restricted language a grant of a right to a policeman to demand a public hearing and a grant of a power in the commission to conduct a public hearing in case of a policeman who has been merely suspended for a period of five days. We are not aware of any language in Article 5A which grants a right to a person to demand a public hearing, or which grants to the commission the power or authority to conduct a public hearing, except that portion of Section 13 which provides for the right of an individual to demand a public hearing and for power or authority in the commission to conduct a public hearing in the restricted situation of a "person sought to be removed or reduced." The power, authority and jurisdiction of the police civil service commission being wholly dependent upon statute, we feel that we would do violence to the language of the statute if we should hold that a person who has been merely suspended for five days has a right to demand a public hearing and that the commission has power, authority and jurisdiction to conduct a public hearing in such a situation.
It is argued in behalf of the respondents that, if the municipal authorities have a right to suspend a policeman for five days without a right to a public hearing before the commission, it follows that they may similarly suspend a policeman for three months or for six months and that they may make an endless succession of frequently recurring suspensions of a similar nature, so that such suspension or suspensions would be tantamount to a removal, discharge or to a reduction in rank or pay. Whether the municipal authorities could legally suspend a policeman in such a manner, and whether such suspension or suspensions would be of such nature or character as to be tantamount to a removal or reduction so as to give a right to a public hearing before the commission, we are not called upon to decide. We do not have such a case before us for decision. All we are called upon to decide and all we do decide in that area in this case is that a mere suspension of the policeman pursuant to the municipal code for a period of five days does not amount to a removal of the policeman or a reduction in his rank or pay within the meaning of the statutory language now under consideration.
Inasmuch as a decision of the basic question in this case involves primarily a determination of legislative intent as expressed in Article 5A, and particularly in Section 13 of that article, reported decisions of other courts are of only limited value. In a similar case, involving a municipal police department, the opinion in State ex rel. Wendling v. Board of Police and Fire Commissioners, 159 Wis. 295, 150 N.W. 493, contains the following language: "The statute, in thus attempting to secure a hearing and determination, must be considered *544 to have in contemplation the hearing before an impartial tribunal; a hearing in the nature of a lawsuit or legal inquiry in which the accuser and the defendant stand as adversary parties and the board as judge and jury. It was apparently not thought necessary to require this in case of suspension. * * *" In making a distinction between removal and suspension in Murley v. Raritan Tp., 117 N.J.L. 357, 188 A. 739, the court stated: "The officer was not removed from office, but suspended in its exercise. He is still a policeman holding his office subject to the suspension. Suspension is the `temporary forced withdrawal from the exercise of office'; removal is the `dismissal from office.' (Webster's International Dictionary.)" At another place in the opinion in the same case the court stated: "Suspensions are a matter of daily occurrence in the discipline of policemen. We think it was not the purpose of the act to give judicial review and trial de novo of every petty infraction of the police rules * * *, and the statute is not to be extended beyond the plain words of its enactment." In Weigle v. City and County of San Francisco, 23 Cal.App.2d 274, 72 P.2d 902, the court stated that "suspension" in a charter provision means temporary withdrawal or cessation from public work as distinguished from permanent severance from the service accomplished by removal.
Section 13 contemplates a public hearing of an adversary nature by the taking of testimony, and a decision by the commission which may, by proper procedure, be reviewed by the circuit court and thereafter by this Court. In the light of prior decisions of this Court, the hearing prescribed by Section 13 is of a judicial character within the meaning of legal principles applicable to proceedings in prohibition. The commission has no statutory jurisdiction to conduct such a hearing in this case which involves the mere suspension of a policeman for a period of five days. Prohibition, therefore, is a proper procedure to prevent the commission in these circumstances from proceeding to conduct the hearing which it has announced its purpose to hold.
For reasons stated in this opinion, the demurrer of the members of the police civil service commission to the prohibition petition is overruled and a writ of prohibition as prayed for is awarded.
Writ awarded.
HAYMOND, Judge (dissenting).
I dissent from the judgment of the majority of the Court in this proceeding which, in my opinion in large measure, defeats the purpose of the Legislature in enacting Article 5A, Chapter 8, Code, 1931, as amended. It was the intention of the Legislature in enacting that statute and in providing for the creation of a civil service commission in each city of five thousand population or more, having a police department, in which its members are paid by such city, to provide for a complete and all inclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers (except the chief of police), policemen and other members of such paid police department in all such cities; and the underlying purpose of the statute is to give security to members of paid police departments against the vicissitudes which attend political municipal elections in the absence of protective statutes. Dougherty v. City of Parkersburg, 138 W.Va. 1, 76 S.E.2d 594.
Prohibition is not the proper remedy to prevent or interfere with a hearing by the police civil service commission of the City of Huntington of a complaint by a member of its paid police department involving his so-called suspension from duty by its chief of police which had been approved by its city manager. Section 13 of the statute expressly provides for an appeal to the circuit court from the ruling of the commission in every case of removal or reduction of a member of the police department. This Court has held that prohibition can not be substituted for a writ of error or an appeal, Fisher v. Bouchelle, 134 W.Va. 333, 61 *545 S.E.2d 305, and that prohibition does not lie to correct errors or to usurp the functions of a writ of error or certiorari or of the remedy by appeal. State ex rel Cecil v. Knapp, 143 W.Va. 896, 105 S.E.2d 569; Crawford v. Taylor, 138 W.Va. 207, 75 S.E. 2d 370; State ex rel. Rufus v. Easley, 129 W.Va. 410, 40 S.E.2d 827; Lake O'Woods Club v. Wilhelm, 126 W.Va. 447, 28 S.E.2d 915; Wolfe v. Shaw, 113 W.Va. 735, 169 S.E. 325; Sperry v. Sanders, 50 W.Va. 70, 40 S.E. 327; Johnston v. Hunter, 50 W.Va. 52, 40 S.E. 448; Hassinger v. Holt, 47 W. Va. 348, 34 S.E. 728; County Court v. Boreman, 34 W.Va. 362, 12 S.E. 490. Nor does prohibition lie to correct errors and irregularities in matters over which an inferior court has cognizance, Brown v. Arnold, 125 W.Va. 824, 26 S.E.2d 238.
Moreover prohibition lies only in case of the unauthorized exercise of judicial functions, and acts of a mere ministerial, administrative or executive character do not come within its province. The majority decision concedes as much in point 2 of the syllabus by quoting point 4 of the syllabus in Fleming v. Commissioners, 31 W.Va. 608, 8 S.E. 267, which is expressed in these terms: "Prohibition lies only in case of the unlawful exercise of judicial functions. Acts of a mere ministerial, administrative or executive character do not fall within its province." See also Langfitt v. County Court of Doddridge County, 86 W.Va. 316, 103 S.E. 105; Williamson v. County Court, 56 W.Va. 38, 48 S.E. 835, 3 Ann.Cas. 355; Woods v. Cottrell, 55 W.Va. 476, 47 S.E. 275, 65 L.R.A. 616, 104 Am.St.Rep. 1004, 2 Ann.Cas. 933; Hassinger v. Holt, 47 W.Va. 348, 34 S.E. 728; Bloxton v. McWhorter, 46 W.Va. 32, 32 S.E. 1004; Norfolk and Western Railway Company v. Pinnacle Coal Company, 44 W.Va. 574, 30 S.E. 196, 41 L.R.A. 414; Haldeman v. Davis, 28 W.Va. 324. In Wiseman v. Calvert, 134 W.Va. 303, 59 S.E.2d 445, this Court said that the writ of prohibition properly issues only to prevent judicial action by inferior tribunals exercising or assuming to exercise judicial functions and that it never issues against administrative boards exercising purely administrative functions. In Hassinger v. Holt, 47 W.Va. 348, 34 S.E. 728, this Court held in point 3 of the syllabus that "A writ of prohibition only goes against a judicial tribunal and judicial action, and not that which is merely ministerial." To the same effect are United States Steel Corporation v. Stokes, 138 W.Va. 506, 76 S.E.2d 474; State ex rel. Noce v. Blankenship, 93 W.Va. 273, 116 S.E. 524; Baker v. O'Brien, 79 W.Va. 101, 90 S.E. 543; Moore v. Holt, 55 W.Va. 507, 47 S.E. 251; Board of Education v. Holt, 54 W.Va. 167, 46 S.E. 134. In United States Steel Corporation v. Stokes, 138 W.Va. 506, 76 S.E.2d 474, this Court held in point 2 of the syllabus that "A writ of prohibition does not lie to prevent the performance of an administrative act."
In the face of the many above cited cases, decided during a period of time extending almost from the formation of this State, it is difficult for me, at least, to believe that the writ would be issued by this Court to prevent purely administrative action by an administrative agency but that is precisely what the present clearly erroneous decision of the majority has accomplished. To me at least it is crystal clear that a hearing of a complaint by the police civil service commission, a nonjudicial agency, is not the exercise of a judicial function or a quasi judicial function, whatever the specious and equivocable term "quasi" may mean or signify, and manifestly any action which could be taken by that commission would be, in fact, as already indicated, a purely administrative or ministerial function.
The act of conducting a hearing at which evidence is introduced and considered does not change or convert an administrative proceeding into a judicial proceeding. It is a matter of common knowledge and every day experience that a legislative or an executive proceeding often requires the testimony of witnesses; but that procedure does not change the character of the proceeding or make such proceeding a judicial proceeding. In State v. Huber, 129 W.Va. *546 198, 40 S.E.2d 11, 168 A.L.R. 808, in which this Court held invalid a statute which undertook to confer upon courts of record administrative authority to entertain complaints relating to alleged violations of law with respect to the sale or distribution of nonintoxicating beer and to revoke and suspend licenses issued by the nonintoxicating beer commissioner, in discussing the clear distinction between legislative, administrative and judicial functions, the opinion contains this pertinent language: "This Court * * * finds itself unable to agree that the mere taking of testimony, the ascertainment of facts, and the law necessary to the decision of a controversy, renders that decision the exercise of judicial power, in cases where, under the Constitution, the subject of the inquiry is one which is within the jurisdiction either of the legislative or executive department of the State Government. * * * We know, as a matter of every day observation, that the agencies of the legislative department of our Government, such as the public service commission, the road commission, the compensation commissioner, the unemployment compensation commissioner, and many other boards and regulatory bodies affecting the professions and particular occupations, have constantly submitted to them matters upon which they take evidence, attempt to apply the law, make decisions sometimes of vast importance, and of importance equal to matters determined by this Court. If these acts are judicial acts, and constitute the exercise of judicial power, then these legislative agencies have no right to exercise such power, for, being judicial in nature, as contended, their exercise belongs exclusively to the courts. The extension of the argument to its logical conclusion destroys it."
Though this Court in Fiedler v. Thackston, 126 W.Va. 84, 27 S.E.2d 278, awarded writs of prohibition to prevent a hearing by the police civil service commission of Huntington, the question whether prohibition was the proper remedy was not raised, considered or expressly passed upon or determined; but if in granting the writs the decision may be considered as holding that prohibition lies in such proceeding, that decision is not in accord with the many decisions of this Court, including a number of the cases cited above, which reach a different conclusion and, as the decision in the Fiedler case on that point is unsound in principle and contrary to an otherwise long line of the decisions of this Court, it is clearly wrong and should have been disapproved and overruled and not followed or adhered to by the majority in its decision of this proceeding.
To reiterate, the hearing provided by Section 13, Article 5A, Chapter 8, Code, 1931, as amended, which the holding of the majority prohibits, is beyond question an administrative proceeding calling merely for the exercise of a purely administrative power and action and can not by any distorted stretch of the imagination be considered or dealt with as a judicial or quasi judicial function.
This Court should cease talking in riddles, desist from regarding fiction as fact, and dispense with the use of the terms quasi judicial powers or functions. In my judgment, as a matter of law and fact, there is no such thing as a quasi judicial tribunal. Either the tribunal or the power or the function is judicial or it is not judicial, and if not judicial the tribunal, the power or the function is necessarily either legislative or executive in character. It can not exist as anything else for there are only three separate and distinct departments in our constitutional form of government and they are the legislative, the executive and the judicial; and by Article V of the Constitution of this State, which makes no reference to any quasi legislative, executive or judicial department, the three designated departments are declared to be separate and distinct from each other. See Hodges v. Public Service Commission, 110 W.Va. 649, 159 S.E. 834. In the opinion in that case, referring to the case of In re Town of Union Mines, 39 W.Va. 179, 19 S.E. 398, this Court said: "In re Union Mines overlooks both the positive inhibition in article V and *547 the entire constitutional design to separate the powers of government, as set forth in article V, VI, VII and VIII. Prior to the words `other jurisdiction,' section 12 mentions certain proceedings and cases in which circuit courts shall have jurisdiction, which the context clearly shows is judicial jurisdiction. No intimation is given there or elsewhere that circuit courts may assume the duties of another department, either as subordinates or as supervisors. We cannot agree that after delimiting the three departments of the government so precisely, the framers then meant by the words `other jurisdiction' to confer on circuit courts departmental authority in or over the other two departments. We adopt the natural inference that the `other jurisdiction' is jurisdiction essentially juridical (then or thereafter prescribed by law) over proceedings not named in the section." The statute relating to prohibition referred to in the majority opinion, Section 1, Article 1, Chapter 53, Code, 1931, makes no mention of any inferior executive, legislative or administrative tribunal but relates only to cases of usurpation or abuse of power "when the inferior court has not jurisdiction of the subject matter in controversy, * * *." (Emphasis supplied).
The obviously unsound statement in the majority opinion that "In the light of prior decisions of this Court, the hearing prescribed by Section 13 is of a judicial character within the meaning of legal principles applicable to proceedings in prohibition" is factually completely inaccurate and palpably erroneous as a matter of law. The police civil service commission is unquestionably an administrative agency, not an inferior court, or an inferior tribunal possessing judicial power. No statute provides that it shall have such power and any statute that undertook to confer such judicial power upon it would contravene Article V, Section 1, of the Constitution of this State which, by way of reminder, provides that "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the power properly belonging to either of the others; * * *", and for that reason, would be unconstitutional, null and void. See City of Huntington v. State Water Commission, 135 W.Va. 568, 64 S.E.2d 225; Danielley v. City of Princeton, 113 W.Va. 252, 167 S.E. 620.
In the Danielley case this Court held unconstitutional, as an unauthorized delegation to the commission of the power to determine judicial, administrative or "quasi" judicial questions, as violative of Article V of the Constitution of this State, Section 7 of Article 11, Chapter 16, Code, 1931, which authorized the circuit court upon review of an order of the State Water Commission to hear and consider any pertinent and relevant evidence and to determine all questions arising on the law and the evidence and to render such judgment or make such order upon the whole matter as the law and equity may require. In the opinion this Court said: "A hearing before the Commission involves the determination (1) of whether the act complained of is a statutory pollution, and if so (2) of the proper sewage treatment or system of filtration to reduce the pollution. The first determination is quasi-judicial; the second is executive or administrative. An order of the Commission properly determining these questions is an order on the whole matter. Upon appeal from the Commission, the circuit court, in order to pass upon the whole matter, would have to review the identical questions primarily determined by the Commission. A review of the system (for the regulation of the pollution) adopted by the Commission and the approval of that or some other system by the court would require the court itself to exercise discretion, i. e. executive power. Whether the proceeding before the court be regarded as certiorari or appeal, the court cannot substitute its discretion for that of the Commission lawfully exercised. People v. The Board, 33 [Barb.] N.Y. 344; Hammer v. Smith, 11 Ariz. 420, 423-4 [94 P. 1121]; Newell v. Franklin, 30 R.I. 258, 264-5, 74 A. 1009. The legislative, executive and judicial powers, under the Constitution, *548 are each in its own sphere of duty, independent of and exclusive of the other; so that whenever a subject is committed to the discretion of the legislative or executive department, the lawful exercise of that discretion cannot be controlled by the judiciary. Cooley, Const.Lim. (8th Ed.) 213-4, 221; The Atty. Gen. v. Brown, 1 Wis. 442 (*513) 449 (*522); State v. R. R. Co., 56 Fla. 617, 634, 47 So. 969 [32 L.R.A.,N.S., 639]; Wright v. Defrees, 8 Ind. 298, 302; Hodges v. [Public Service] Commission, supra [110 W.Va.], 652-3-4 [159 S.E. 834]. This inhibition is so well established that it should be known even to the sciolist."
The decision in The City of Huntington v. Smith, 124 W.Va. 175, 19 S.E.2d 581, cited in the majority opinion, in which this Court said that the police civil service commission of Huntington was an "inferior tribunal" whose ruling is reviewable by certiorari is of no significance or controlling effect in determining whether such commission may prevent a statutorily authorized hearing by a writ of prohibition, as the remedy by prohibition was not involved or considered or even alluded to in that case.
This Court has also said in numerous cases that the writ of certiorari lies only to review judicial or quasi judicial actions of an inferior tribunal. Quesenberry v. State Road Commission, 103 W.Va. 714, 138 S.E. 362; Ashworth v. Hatcher, 98 W.Va. 323, 128 S.E. 93; Carroll Hardwood Lumber Company v. Kentucky River Hardwood Company, 94 W.Va. 392, 119 S.E. 162; Poteet v. County Commissioners, 30 W.Va. 58, 3 S.E. 97.
The provision of Article VIII, Section 12 of the Constitution of this State that the circuit court shall have the supervision and control of all proceedings before justices and other inferior tribunals by mandamus, prohibition and certiorari, cited and relied upon in the majority opinion, was clearly intended to apply only to inferior judicial tribunals and would have been so limited if that provision had been properly construed and applied in numerous difficult cases in which to afford relief legal principles were departed from. Justices are constitutional officers or tribunals and possess limited constitutionally conferred judicial power. By the rule of construction of written instruments known as ejusdem generis, which is that when general words follow an enumeration of persons or things by words of a particular and specific meaning such general words are not to be construed in their widest extent but are to be held to apply to persons or things of the same kind or class as those specifically mentioned, the general words "inferior tribunals" should have been construed to mean limited inferior judicial tribunals. See Cuppett v. Neilly, 143 W.Va. 845, 105 S.E.2d 546; Bischoff v. Francesa, 133 W.Va. 474, 56 S.E.2d 865; Jones v. Island Creek Coal Company, 79 W.Va. 532, 91 S.E. 391; Gauley Coal Land Company v. Koontz, 77 W. Va. 583, 87 S.E. 930; Darnell v. Wilmoth, 69 W.Va. 704, 72 S.E. 1023. Unfortunately this Court, in a number of early cases, in order to provide a review of cases in which the refusal of such review would work a hardship, departed from established legal principles and resorted to the use of the words quasi judicial and in that way created the existing anomaly between judicial and nonjudicial tribunals.
The anomalous trend developed to considerable extent in connection with the incorporation of municipalities by the circuit court as to which a number of cases, among them In re Town of Union Mines, 39 W.Va. 179, 19 S.E. 398, and Elder v. Incorporators of Central City, 40 W.Va. 222, 21 S.E. 738, held that the circuit court could determine from the facts in connection with the incorporation of a municipality whether the requirements imposed by statute had been complied with and that in so doing it performed a quasi judicial or administrative function. These cases and others involving the question of the exercise of judicial or quasi judicial power by certain tribunals, boards and commissions, have been criticized and the reasoning disapproved in the later cases of Hodges v. Public Service *549 Commission, 110 W.Va. 649, 159 S.E. 834; In re Proposal to Incorporate the Town of Chesapeake, 130 W.Va. 527, 45 S.E.2d 113; and Wiseman v. Calvert, 134 W.Va. 303, 59 S.E.2d 445, in which this Court held in point 4 of the syllabus that prohibition does not lie to control the action of a county court in exercising power not judicial or quasi judicial in its nature in the incorporation of a municipality under Chapter 83, Acts of the Legislature, 1949, Regular Session.
In the Wiseman case the opinion discusses and criticizes the term "quasi" and contains these statements: "Though it appears that decisions which recognize the practice of permitting appeals from and writs of error to orders of administrative tribunals have proceeded on the theory that such agencies exercise what is termed `quasi judicial' power, that principle does not overlook or destroy the valid distinction between `quasi judicial' power and power judicial in its nature, which is judicial power in its real and proper sense and meaning. As stated in the opinion in State v. Huber, 129 W.Va. 198, 40 S.E.2d 11, 168 A.L.R. 808, there is a recognized distinction between `judicial power' and `quasi judicial' power. The one is power which in its nature is judicial; the other, whatever its meaning, is not judicial power in its real and proper sense. The prefix `quasi' means `as if; as though; as it were; in a manner; in a certain sense or degree; having some resemblance to; seeming; seemingly'. Webster's New International Dictionary, Second Edition, Unabridged, G. & C. Merriam Co., page 2035; Black's Law Dictionary, Third Edition, page 1478. Its use or meaning is indicated in this quotation from Black's Law Dictionary, Third Edition, at page 1478: `This term is used in legal phraseology to indicate that one subject resembles another, with which it is compared, in certain characteristics, but that there are also intrinsic differences between them. Baker v. Stucker, 213 Mo. App. 245, 248 S.W. 1003, 1006.'
"That which resembles another subject can not be that other subject. The distinction between `a quasi judicial act' and `a judicial act proper' is discussed in the opinion in the case of State v. South Penn Oil Company, 42 W.Va. 80, 24 S.E. 688, in this language: `Many acts are now performed and decisions made by administrative officers, and boards of commissioners which are termed `quasi judicial'; and such administrative or quasi judicial duties seem to be largely on the increase. The term implies that the act has some of the marks of a judicial act, and lacks some. The term presupposes both resemblance and difference. But what element it must contain to be quasi judicial it is not easy to determine on principle. We only know that it does not possess all the class characteristics of a judicial act proper.'"
Those prior cases, however, were not overruled for the express reason that this Court was of the opinion that to do so would have had an unsettling effect upon many municipalities of the State and, in consequence, those holdings were considered an exception to the sound doctrine of the separation of powers and they were reaffirmed solely on the ground of public policy. Those decisions illustrate and justify the statement that hard cases make bad law; and the action of the majority in this proceeding, in my opinion, makes more bad law. Though those cases and numerous others to the same effect with respect to the so-called quasi jurisdiction of various inferior tribunals, as indicated, have not been overruled, the reasoning on which those decisions are based has been disapproved and consequently such cases are not sound precedents to be followed and adhered to by this Court, and, in my judgment, it is extremely unfortunate that the majority in this case has adhered to and followed them in reaching the conclusion that prohibition lies to prevent the exercise of jurisdiction by the police civil service commission in the performance of a purely administrative act. So to hold only adds to the conflict in the decided cases and increases *550 the confusion and uncertainty as to the proper function of the writ of prohibition.
But even if, in the face of the many decisions to the contrary, prohibition for some strange and unwarranted reason should be considered as the proper remedy in this proceeding, the majority by holding that the commission is without jurisdiction to hear the complaint of a member of the police department involved in this proceeding has erroneously misconstrued and improperly applied the express provisions of Section 13 of the statute which clearly state that no member of any police department subject to the terms of Article 5A shall be removed, discharged or reduced in rank or pay, except for just cause, and that if the person sought to be removed, or so reduced, shall demand it, the civil service commission shall grant him a public hearing. The undisputed fact is that the complaining member of the police department was removed from duty without pay for a period of five days. This in my judgment means that he was temporarily removed from active duty and reduced in his pay for that period of time. That his enforced absence from duty without pay, which he has lost and will not be able to regain, constitutes, to the extent of his lost salary, a reduction in pay, is to me crystal clear; to hold otherwise is to disregard reality and to refuse to give effect to the plain words of the statute. Though the action of the chief of police in relieving the complaining member of the police department from his duties as such without pay for a period of five days is characterized as a "suspension" for that period, it is manifest that the so-called suspension is a temporary removal from the performance of his duties with a consequent reduction in his pay within the clear meaning of removal and reduction in pay as used in Section 13 of the statute. If the period of the so-called suspension had been for a period of three months without pay, it could not, with any degree of reason, be contended that the person so suspended had not been removed from active service without a reduction of pay during the suspension period. The majority avoids an answer to that question by stating that a suspension of five days only was before the Court and that it is not called upon to decide whether a suspension of three months or six months would be tantamount to removal. I disagree with that statement and instead assert that in principle a suspension of five days is identical, except as to the difference in time, with a suspension of three months or six months, and that each constitutes a removal of the complaining member of the department; and the refusal of the majority to recognize the identity of the suspension for either period and to express an opinion on that point indicates the unsoundness of the holding that a five day removal from duty, called a suspension, is not within the provisions of Section 13 which entitle the complaining member to a hearing. There is no difference in kind or principle between a suspension which removes the suspended member from active duty for five days and a suspension which removes him from such duty for three months or six months. The sole difference in such instance is one of degree. It is manifest that a so-called suspension for a period of three months or six months as well as the so-called suspension of five days, is a removal and a reduction in pay of the suspended member within the clear meaning of "removal" and "reduction" in pay as these terms are used in Section 13 of the statute. The statute, including the provisions of Section 13, being a remedial statute, should be liberally construed to effectuate its underlying purpose which is to give security to the members of a paid police department subject to its provisions and to protect them against arbitrary action which apparently has occurred in this instance. Dougherty v. City of Parkersburg, 138 W.Va. 1, 76 S.E.2d 594.
The majority seeks to justify its action in holding that the police civil service commission was without jurisdiction to consider the suspension of the complaining member on the ground that Section 13 of the statute did not apply to or embrace such suspension *551 and that it was not included within any of the terms "removed, discharged or reduced in rank or pay." In this it is plainly in error. To reach its conclusion the majority considered the words "removed" and "discharged" as synonymous. In this also it is in manifest error. No dictionary of recognized or accepted authority considers such words as synonyms or exact equivalents. On the contrary the usual and ordinary meaning of each of these words is different. Removal, the noun derived from the verb "removed" has been said to mean a temporary enforced suspension from the exercise of duties, which is the exact situation involved in this proceeding. Black's Law Dictionary, Fourth Edition, page 1459. The word "removal" has been given different meanings, distinct from the meaning of the word "discharge." It has been said to mean deprivation from office by the authorized act of a competent superior, Attorney General ex rel. O'Hara v. Montgomery, 275 Mich. 504, 267 N.W. 550; a reduction in rank of an officer of a municipal corporation, Branin v. Delaware Township, 121 N.J.L. 602, 3 A.2d 806; and demotion of a teacher as distinguished from dismissal or discharge and that it commonly connotes a change from one place or station to another, State ex rel. McNeal v. Avoyelles Parish School Board, 199 La. 859, 7 So.2d 165. In Markey v. Pickley, 152 Iowa 508, 132 N.W. 883, in considering a statute relating to a board of police and fire commissioners authorized to review the action of the chief of police in suspending or discharging any member of the police force, the Court held that the word "suspended" meant to remove such member temporarily from his employment. In Carey v. Board of Police of the City of Plainfield, 53 N.J.L. 311, 21 A. 492, the Supreme Court of New Jersey with respect to a statute of that State which conferred the power of removing members of a police force against whom charges were preferred, held that a suspension for a specified term without pay was a removal from office pro tanto within the spirit and meaning of the statute. It is clear from the rulings in the two cases just cited that when the complaining member of the police force of the City of Huntington in this proceeding was suspended for a period of five days without pay he was removed pro tanto from his employment and came within the provisions of Section 13 of the statute which entitle a member of the department who has been removed and whose pay has been reduced to a hearing by the police civil service commission and authorize the commission to hold such hearing
A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of a statute. State v. Jackson, 120 W.Va. 521, 199 S.E. 876; Wilson v. Hix, 136 W.Va. 59, 65 S.E.2d 717; State ex rel. Watson v. Rodgers, 129 W.Va. 174, 39 S.E.2d 268; Long Flame Coal Company v. State Compensation Commissioner, 111 W.Va. 409, 163 S.E. 16; Vinson v. County Court of Wayne County, 94 W.Va. 591, 119 S.E. 808; State ex rel. Churchman v. Hall, 86 W.Va. 1, 102 S.E. 694; State ex rel. Herald v. Surber, 83 W.Va. 785, 99 S.E. 187; State v. Harden, 62 W.Va. 313, 58 S.E. 715, 60 S.E. 394; Building and Loan Association v. Sohn, 54 W.Va. 101, 46 S.E. 222. In 17 M.J., Statutes, Section 42, the text contains these statements: "In the interpretation of a statute, effect shall be given, if possible, to every section, clause, word or part of the statute. Under the usual and elementary rules of construction, the language of a statute must be construed so as to give that language some meaning where it is possible to do so, without doing violence to the clear intent and purpose of the enactment. It is one of the fundamental rules of construction of statutes that the intention of the legislature is to be gathered from a view of the whole and every part of the statute taken and compared together, giving to every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were *552 used in some other sense. If the intention of the legislature can be thus discovered, it is not permissible to add to or subtract from the words used in the statute. Every part of an act is presumed to be of some effect and it is not to be treated as meaningless unless absolutely necessary. * * *." See also State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars of the United States, 144 W.Va. 137, 107 S.E.2d 353; Slack v. Jacob, 8 W.Va. 612; 50 Am.Jur., Statutes, Sections 223, 224, 227 and 228.
The liberal construction required by the statute of the word "removed" applies to the temporary removal of the complaining member of the police department from his active duty and a reduction of his pay during a period of five days and authorizes the police civil service commission to entertain his complaint against such action, grant him a public hearing, and determine the merits of the complaint as was, in my judgment, clearly intended by the Legislature in enacting the statute. Though I concede the right and authority under the statute of the chief of police or other superior officer in administering and enforcing reasonable discipline by the proper exercise of that right and authority, it is my belief that he should not have or exercise, and was not intended to have or exercise, the right or authority to remove a member of the department from the performance of his active duties attended with an actual reduction in the amount of his pay for the period of such removal and, in that way, defeat the statutory right of such member to be heard and to deprive the police civil service commission of its authority under the statute to hold a public hearing and to determine the merits of the complaint of a member of the department who has been temporarily removed from active duty for five days and whose pay has been reduced for that period of time. A proper construction and correct application of the provisions of Section 13 of the statute, in giving effect to the legislative intent, would have recognized and upheld the jurisdiction of the police civil service commission to entertain and determine the complaint of the aggrieved member of the department and to hold a public hearing to consider the complaint. The refusal of the majority so to construe and apply the statute has, in my opinion, resulted in the rendition of a manifestly erroneous judgment in this proceeding.
For the reason that prohibition does not lie in this proceeding to prevent the exercise of its jurisdiction by the police civil service commission to perform a purely administrative function and engage in the performance of a mere ministerial act, and because the majority has clearly misconstrued the applicable provisions of Section 13 of the statute, I would refuse the writ prayed for by the petitioner and permit a hearing of the complaint by the police civil service commission.